Irma P. WALLACE, wife of William H. Wallace, Deceased, Plaintiff,

v.

DISTRICT NO. 2, MARINE ENGINEERS BENEVOLENT ASSOCIATION AFL–CIO, Defendants.

Civ. A. No. 72–1290.

United States District Court,
E. D. Louisiana.

Jan. 27, 1975.

Earl J. Schmitt, Jr., New Orleans, La., for plaintiff.

C. Paul Barker, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

This case involves the duties of the administrator of a Welfare Plan designed to provide employee benefits for a unit composed entirely of supervisory employees. The plan is embodied in a written document entitled Agreement and Declaration of District 2, MEBA Welfare Plan. That agreement is, as it states, a declaration of trust between the union, which represents ships officers certificated by the Coast Guard, and the various employers who adopt the plan. The plan is also described in a booklet entitled "District 2 MEBA-AMO AFL-CIO Welfare, Dental and Major Medical Care" designed for distribution to inform interested persons both of eligibility for benefits, and of benefits provided by the plan.

Irma P. Wallace, widow of William H. Wallace who died on October 29, 1971, sought information concerning any benefits that might be due her as a beneficiary under the plan from Charles B. Richardson, an alternate Trustee of the AFL-CIO Welfare Plan and District 2, AFL–CIO Pension Plan. Mr. Richardson is also a local officer in the District 2, AFL–CIO Union. Mr. Richardson, acting in good faith, told the widow she was ineligible for any benefits because her husband was not a union member in good standing. He said he did not have a description of the plan but gave Mrs. Wallace's lawyer the name of Thomas Flintoft, who was the plan's claim administrator, and said the lawyer could write him for a plan description. The lawyer also discussed with Mr. Richardson how Wallace might be reinstated to union membership in good standing by payment of back dues.

The plaintiff's lawyer wrote Mr. Flintoft on November 5, 1971 demanding the payment of death benefits. He also requested "a copy of your contract with the decedent's employer." The plaintiff's lawyer sent another letter confirming the decedent's employment to Mr. Flintoft on November 9, 1971 and yet

another letter on November 10, 1971, again requesting a copy of the contract with the employer and a copy of the "insurance contract" which covers "all union members who work for the company."

On November 18, Mr. Flintoft wrote plaintiff's lawyer stating that "this office" does not have copies of the collective bargaining agreement. "It is the opinion of the Plan office that the Collective Bargaining Agreement would not contain any information regarding death benefits." The letter further stated that the Plan is self-insured and "a formal 'insurance policy' as such does not exist." The letter then related that the rules of the plan with respect to eligibility are forwarded on application for the death benefit; and that plan office records indicated that "Mr. Wallace was eligible for benefits." It said nothing about any plan requirement that the decedent's union dues be paid up at the time of his death or that the decedent be a union member in good standing to be eligible. The amount of the death benefit was $7,000.

After further correspondence, on May 19, 1972, two checks were sent to Mr. Richardson, payable to Mrs. Wallace. One was for $5550, the other was for $1450. Mrs. Wallace was required to endorse the $1450 to the union in payment of the decedent's back dues as a prerequisite to delivery of the other check.

Meanwhile on March 13, 1972, the plaintiff's lawyer had written a letter to Mr. Flintoft demanding a description of the plan. There is no direct evidence that the letter was mailed except testimony about the lawyer's usual office routine. Mr. Flintoft has no memory of seeing it and a copy of it was not found in his file.

The litigation that ensued was based on concepts that were less than artfully and fully pleaded. Plaintiff's complaint, filed in August 1972, was directed solely against the Union. It alleged a violation of Section 8 of the Welfare & Pension Plans Disclosure Act.

On August 25, 1972, counsel for the Plan wrote counsel for the plaintiff and sent to him a copy of the Plan description. But it became evident that this court's jurisdiction over the union was doubtful, and that it was possible that no basis for relief against the union could be based on the Disclosure Act. So the complaint was amended to name all of the trustees as defendants. By this time counsel for the plaintiff had received a copy of the Plan description. The trustees, as individuals, appeared to be beyond the court's jurisdiction. Therefore, the plaintiff filed a second supplemental and amended complaint naming only the administrator as the defendant, and seeking only the penalties prescribed by the Disclosure Act.

As finally amended, plaintiff's complaint does not allege a breach of trust or a breach of fiduciary duty. The only complaint is that the administrator failed to furnish a copy of the Plan description, as required by Section 8(a)(2) of the Welfare & Pension Plan Disclosure Act, 29 U.S.C.A. § 307(a)(2). The defense is now reduced as well to a single line; the plaintiff never made a written request for a copy of the Plan description; when it became clear that this was the nature of her complaint, a copy of the Plan description was sent to plaintiff's counsel.

Even if it be assumed that the letter dated March 13, 1972, was not sent, this defense supposes that a written request for a plan description is not made until the request is set forth in precise and artful terms. The correspondence addressed to plan officials made it clear that the plaintiff's lawyer was no expert in matters of this type. It is equally clear that Mr. Flintoft was. Instead of sending a copy of the Plan description, which would have answered all the questions put, the administrator contented himself, through the intermediacy of Flintoft, with literal, artful, and what I

must conclude to be evasive replies. The letters requesting copies of union contracts and of insurance policies obviously sought documents from which it could be determined what benefits were due Mrs. Wallace.

■■ It is clear that the administrator was a fiduciary. See Senate Report No. 1440, U.S. Code Congressional and Administrative News, 85th Congress, 2d Session 1958, pp. 4137 at 4146. His duty was to the Plan's beneficiaries, not to the companies who contributed to the Plan nor to the Union that had secured it. It was the duty of the fiduciary to respond to requests fully and frankly, with the interests of the beneficiary in mind.

■ It must be remembered that, from the start, there was no question of a bogus claim; eligibility was admitted by November 18, 1971. Viewed as a fiduciary should view correspondence from an uninitiated beneficiary or her counsel, the November 5, 9 and 10 letters were sufficient to constitute a demand for a plan description.

■■ False trails must not obscure the decision. The defendant seeks to arouse some sort of support for its position by showing that Mrs. Wallace was married to Wallace only a short time and was separated from him at the time of his death. Since it has been determined by the defendant himself that she was the person entitled to receive benefits under the plan, this is irrelevant. Nor is it any more relevant to urge that a decision favorable to the plaintiff will cause a financial loss to the other beneficiaries of the plan. The sole defendant in this case is the administrator individually; it is he in his individual capacity, not the Plan, that must bear any judgment.

Indeed, while the issue is not before the court, it would likely be improper for the Plan to reimburse him for any judgment. "The great weight of English and American authority imposes liability for such torts [e. g. torts committed by the trustee against a third person] upon the trustee in his individual capacity and not as a fiduciary. Any judgment recovered is collectible out of the private property of the trustee and not out of trust assets." Bogert, Trusts and Trustees (2d ed. 1965) § 731. See also id. at § 734.

■ Since the imposition of the statutory penalty is discretionary, the administrator seeks to avert it by arguing that Mrs. Wallace suffered no loss as a result of her failure to have a Plan description. It is contended that, by custom, the Plan requires membership in the union in good standing as the basis for the receipt of benefits; and that, therefore, since Mrs. Wallace was not entitled to benefits, having a Plan description would have availed her nothing. It would be passing strange if a written trust agreement could, in effect, be amended by such a "custom." Parol evidence is inadmissible to supply an additional term to a written trust. Bogert, Trusts and Trustees (2d Ed. 1965) § 88. The Labor Management Relations Act prohibits a payment by an employer to any labor organization, or any representative of its employees, save, inter alia,

> [W]ith respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . *Provided,* . . . the detailed basis on which such payments are to be made is specified in a *written* agreement with the employer. (Emphasis supplied). 29 U.S.C.A. § 186.

This would appear, at least inferentially, to prohibit conditioning the payment of benefits on compliance with any custom not embodied in the written agreement; and a fortiori any custom for the benefit of the union. It is no answer to say that this is a union of supervisory employees for Section 186 deals with all employer contributions. The administrator's answer is that he

was an instrument of beneficence: we let her pay up the dues in order to become eligible. The administrator's brief indicates that he considers it his province to make trust rules as vagary moves him, saying, "The Plan office could well have taken the position that plaintiff was not entitled to any benefit at all because of her husband's lack of membership in good standing in the union." If so, then surely this is a plan that may be modified according to the whim or charity of the administrator. The plan may not be thus obliquely altered.

The court casts no reflection whatever on the union or its representative. The union was owed dues. It collected them. It was not Wallace's trustee. It is the administrator who is charged with the statutory duty; it is the administrator who is the fiduciary; it was the administrator who failed to send the Plan description; it was the administrator who chose to put assets that were beyond the reach of creditors, La.R.S. 20:33,[1] into the union's hands; and it is the administrator alone who must respond for his fault.

The widow seeks to recover penalties of $50.00 per day from November 5, 1971, until August 25, 1972, when, after this suit had been filed, the defendant's counsel complied with 29 U.S.C. § 308(b) and furnished her with a copy of the plan.[2]

Penalties under the statute have been denied where failure to furnish a description of the plan caused no injury to the plaintiff, as for example where the complainant was aware of the plan details and did not suffer from nondisclosure. This was the situation in Harrold v. Coble, 4 Cir. 1967, 380 F.2d 18, where a vice-president of the company was refused permission to view the plan in the main office.

Here the correspondence made clear that Mrs. Wallace was not familiar with the plan and wanted a description of it. Her demand was not collateral, as in Doherty v. Sylvania Pension Plan For Hourly Employees, D.Mass.1970, 310 F. Supp. 1331, where the plaintiff made "a formal demand for an accounting," and where the plaintiff had "neither alleged nor offered to show any damages." 310 F.Supp. at 1333.

Here, if the widow had been promptly provided with a copy of the Plan description, she might have avoided paying the union dues. Or her lawyer might properly have been instructed concerning the proper type of claim to make. Considering all the circumstances, I think that a penalty should be assessed.

However, the statute does not require that the penalty be exacted to mulct the administrator or that it run forever, once the Plan description is demanded. See discussion of an analogous issue in Southern Cross Steamship Co., Inc. v. Firpis, 4 Cir. 1960, 285 F.2d 651. In my opinion, a penalty for 30 days at $50 per day will accomplish substantial justice. Therefore judgment will be rendered in favor of plaintiff and against defendant in the sum of $1500 plus costs, and for reasonable attorney's fees. If the parties cannot agree on the amount of costs and attorney's fees within 15 days, that issue will be referred to a Magistrate as Special Master for hearing, report and for recommendations.

---

1. Also see the Plan in the present case.

2. If the administrator of a plan "fails or refuses, upon the written request of a participant or beneficiary covered by such plan, to make publication to him within thirty days of such request, in accordance with the provisions of section 307 of this title, of a description of the plan or an annual report containing the information required by sections 305 and 306 of this title, [the administrator] may in the court's discretion become liable to any such participant or beneficiary making such request in the amount of $50 a day from the date of such failure or refusal." 29 U.S.C. § 308(b).

The court may in its discretion, in addition allow a reasonable attorney's fee and costs. 29 U.S.C. § 308(c).