**Ruth HABERERN, Plaintiff,**

v.

**KAUPP VASCULAR SURGEONS LTD. DEFINED BENEFIT PLAN AND TRUST AGREEMENT; Lehigh Valley Vascular Surgeons Ltd. Retirement Plan; Lehigh Valley Vascular Surgeons Ltd.; and Kenneth M. McDonald, Trustee, Defendants.**

**Civ. A. No. 88–1853.**

United States District Court, E.D. Pennsylvania.

May 12, 1993.

Paul R. Fitzmaurice, David L. Hall, Drinker, Biddle & Reath, Philadelphia, PA, Thomas J. Maloney, Bruce E. Davis, Bethlehem, PA, Sharon L. Klingelsmith, Philadelphia, PA, for plaintiff.

Kevin T. Fogerty, Traub, Butz & Fogerty, P.C., Allentown, PA, for defendants.

## FINDINGS OF FACT, DISCUSSION, AND CONCLUSIONS OF LAW

HUYETT, District Judge.

Plaintiff Ruth Haberern from 1974 to 1985 worked full-time as a secretary-bookkeeper for a professional corporation formerly known as Kaupp Vascular Surgeons, Ltd., and later known as Lehigh Valley Vascular Surgeons, Ltd. Defendants are the professional corporation, its defined benefit and defined contribution pension plans, and the trustee of those plans. Plaintiff commenced this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1992). Plaintiff seeks to recover back salary and pension benefits that Defendants have allegedly wrongfully withheld, as well as costs and attorney's fees. Following a nonjury trial, the Court makes the following findings of fact and conclusions of law.

## I. Findings of Fact

### A. *Identity of the Parties*

Plaintiff Ruth Haberern is an adult individual who resides at 5677 Merion Lane, Macungie, Pennsylvania. (Plaintiff's Testimony, Transcript 11/23/92 at 10.) Kaupp Vascular Surgeons, Ltd. (later known as Lehigh Valley Vascular Surgeons, Ltd.) is a professional corporation that was incorporated on November 30, 1973. (Uncontested Statement of Facts dated September 11, 1990 ¶ 2.) The corporate name of Kaupp Vascular Surgeons, Ltd. was changed to Lehigh Valley Vascular Surgeons, Ltd. (Lehigh Valley) in November 1984. Defendant Lehigh Valley Vascular Surgeons, Ltd. Retirement Plan (the Defined Contribution Plan) and Defendant Kaupp Vascular Surgeons, Ltd. Defined Benefit Pension Plan and Trust Agreement (the Defined Benefit Plan), at all times relevant to this action were "employee pension benefit plans" and "pension plans," as defined in 29 U.S.C.A. § 1002(2) (West Supp.1992) and governed by ERISA. The Defined Contribution Plan and the Defined Benefit Plan are separate entities from, and independent of, the employer that sponsors the Plans. (Uncontested Facts and Admissions dated November 23, 1992 and received into evidence as Court Exhibit 1 ¶ 2.) Defendant Lehigh Valley is, and was at all times relative to this action, the employer that sponsored the Defined Benefit and Defined Contribution Plans. Defendant Lehigh Valley was also the administrator of the Plans, as that term is defined under ERISA, 29 U.S.C.A. § 1002(16) (West Supp.1992). (Ct. Ex. 1 ¶ 3.) The principal place of business of Defendant Lehigh Valley is 1275 South Cedar Crest Boulevard, Allentown, Lehigh County, Pennsylvania 18103. (Uncontested Statement of Facts dated September 11, 1990 ¶ 5.) Defen-

dant Kenneth M. McDonald, M.D. (McDonald) is an adult individual who maintains a business address at Defendant Lehigh Valley. (Ct. Ex. 1 ¶ 5.) In 1976 McDonald became an employee of Lehigh Valley. (Pl. Test. Tr. 11/23/92 at 23.) McDonald served as a trustee of the Defined Contribution Plan from May 1, 1978 to the present, and as a trustee of the Defined Benefit Plan from its inception on September 1, 1979. (Ct. Ex. 1 ¶ 6.) McDonald is currently the trustee of the Defined Contribution Plan and, at all times relevant to this action, served as a trustee of the Defined Benefit Plan.

### B. *Plaintiff's Employment With Lehigh Valley*

Plaintiff began working for Kaupp Vascular Surgeons, Ltd. on July 1, 1974. At that time the only employees of the corporation were Plaintiff and Harry A. Kaupp, M.D. Kaupp was the sole shareholder, director, and officer of the corporation. Plaintiff's duties as a secretary-bookkeeper involved handling the telephone, scheduling appointments, processing insurance claims forms, typing letters, receiving payments, bookkeeping, taking care of checkbooks, and paying all the bills. Plaintiff's duties with respect to the Defined Contribution Plan involved keeping an accounting of the contributions for each employee and where those contributions were deposited. When the number of employees of Kaupp Vascular Surgeons, Ltd. and later Lehigh Valley expanded beyond Plaintiff and Dr. Kaupp, Plaintiff continued to perform all the same duties that she had performed previously. (Uncontested Statement of Facts dated September 11, 1990 ¶¶ 8–10, 13–15.) Plaintiff worked for Defendant Lehigh Valley on a full-time basis until January 2, 1985. She worked on a part-time basis from January 3, 1985 until December 16, 1986. (*Id.* ¶ 8.)

To attract Plaintiff to work for him, Dr. Kaupp offered Plaintiff an annual salary of $11,500. (Pl. Test. Tr. 11/23/92 at 13.) As part of her compensation package, Dr. Kaupp offered to pay Plaintiff a percentage of the gross receipts of the corporation. The corporation also provided a defined contribution pension plan as well as health insurance for Plaintiff. (Pl. Test. Tr. 11/23/92 at 14;

Kaupp Deposition at 112–113.) Plaintiff accepted these terms and began working for Dr. Kaupp. There was, however, no written employment contract. (Tr. 11/23/92 at 107.)

Plaintiff received biweekly salary checks as well as a check at the end of the corporation's fiscal year representing her percentage of the receivables collected by the corporation for the fiscal year. Plaintiff's salary as reported on her W–2 forms increased every year from 1975 to 1979. (Pl. Test. Tr. 11/23/92 at 15–18; Pl.Ex. 90.) Commencing September 1, 1979 Plaintiff's biweekly salary checks were increased from $561.80 to $601.20 up to and including August 30, 1984. Effective September 1, 1984, up to and including December 31, 1984, Plaintiff's biweekly salary checks were increased to $839.58. (Uncontested Statement of Facts dated September 11, 1990 ¶¶ 18, 19.)

Beginning in June 1984, Plaintiff gave frequent and repeated notices to Lehigh Valley that she intended to retire on August 31, 1984. Before August 31, 1984 Plaintiff postponed her retirement date to January 2, 1985, and gave notice to Lehigh Valley. Lehigh Valley held a retirement dinner in Plaintiff's honor in October 1984. (Pl. Test. Tr. 11/23/92 at 30–35; Kaupp Dep. at 17–19.) Although Plaintiff retired on January 2, 1985, Dr. McDonald asked Plaintiff to work part-time thereafter and Plaintiff worked one day per week or less until December 16, 1986. (Pl. Test. Tr. 11/23/92 at 34.) During the period that Plaintiff worked for Lehigh Valley on a part-time basis, Lehigh Valley paid her biweekly and deducted taxes from her pay. Plaintiff received W–2 forms for 1985 and 1986 and the corporation covered her under its medical plan. (Uncontested Statement of Facts dated September 11, 1990 ¶¶ 20–22.)

### C. *The Defined Contribution Plan and the Defined Benefit Plan*

Kaupp Vascular Surgeons, Ltd. established a pension plan, the Defined Contribution Plan, effective December 15, 1973. (Pl.Ex. 4.) The initial trustees of the Defined Contribution Plan were Dr. Kaupp and his wife, Barbara Kaupp. Plaintiff was a participant in the Plan from its effective date. (Pl. Test. Tr. 11/23/92 at 13.) Under section 4.1 of the

Plan, Lehigh Valley agreed to contribute each year on behalf of each participant an amount equal to 20.5 percent of the first $10,800 of the participant's annual compensation plus 27.5 percent of compensation in excess of $10,800. (Pl.Ex. 4.) Section 7.3 of the Plan provides that participants may direct the investments of their contributions under the Plan. Plaintiff made this election in 1974. To the extent a participant has given specific directions, the Trustee is subject to these directions. Pursuant to section 5.1, the amounts contributed by the employer on behalf of a participant could be held in one or more accounts in a participant's name. These accounts would be credited with investment earnings or losses. § 5.6. Plaintiff deposited the amounts Lehigh Valley contributed on her behalf into funds maintained for her benefit at Dean Witter Reynolds, Inc. (Dean Witter) and Gruntal & Co. (Gruntal). Plaintiff, consistent with the Plan, self-directed these accounts. (Pl.Ex. 4) Under section 6.8 of the Plan, an employee's share at any time is the amount in his or her account, subject to any vesting provisions of the Plan. At the time of her retirement, Plaintiff was fully vested in her Plan accounts. (Pl.Ex. 4; Ct. Ex. 1 ¶ 17.)

Effective September 1, 1979, Defendant McDonald and Dr. Kaupp, the two shareholders of Kaupp Vascular Surgeons, Ltd., established a defined benefit pension plan, Kaupp Vascular Surgeons, Ltd. Defined Benefit Plan and Trust Agreement (the Defined Benefit Plan). A defined benefit plan differs from a defined contribution plan in that there are no individual accounts in a defined benefit plan. Rather, a person's pension is based upon a formula taking into account factors such as age, compensation, and years of service. Thus, the employer guarantees a certain benefit based on a formula and benefits are paid out of a fund under the plan. (Pl. Ex. 2; John Lisicky Test. Tr. 11/23/92 at 126.)

Plaintiff was, at all times relevant, a participant in both plans, and, at the time of her retirement, Plaintiff was fully vested in both plans. (Pl. Test.; Ct. Ex. 1 ¶ 17.) Lehigh Valley was the sponsor and administrator of both plans. Lehigh Valley had the power to appoint trustees and to direct the trustees to make distributions of benefits. (Ct. Ex. 1 ¶¶ 2–4.) As fiduciaries of the Plans, McDonald and Lehigh Valley exercised authority and control in the management of the Plans. The fiduciary duties of McDonald and Lehigh Valley included responsibility for administering the Plans and distributing information, documents, and reports regarding the Plans, and for distribution of benefits. (Pl. Exs. 2 and 4 art. XI.) Defendant Lehigh Valley terminated the Defined Benefit Plan effective August 31, 1984 and the Internal Revenue Service approved the termination in December 1985. (Ct. Ex. 1 ¶¶ 16, 20.) Plaintiff was fully vested in the Plan on August 31, 1984. (*Id.* ¶ 17.)

### D. *Use of Plaintiff's Receivables Percentage to Fund Her Pensions*

The contributions under the Defined Contribution Plan and the benefits under the Defined Benefit Plan were based upon the amount of a participant's total compensation and salary, respectively. (Pl. Exs. 2, 4.) For the fiscal years beginning July 1, 1975 and ending June 30, 1979, Plaintiff received as compensation, at the end of each fiscal year, a portion—approximately 80 percent—of a percentage (according to a formula) of the gross receipts of the corporation for that fiscal year. Lehigh Valley used the remaining 20 percent of that receivables percentage, that Plaintiff otherwise would have received, to fund Plaintiff's share of her Defined Contribution Plan. In effect, Plaintiff was forced to fund her own Defined Contribution Plan contribution. Section 4.1 of the Defined Contribution Plan states, however, that the employer is required to make the full contribution under the Plan. (Pl.Ex. 4; Pl. Test. Tr. 11/23/92 at 19–21.) Plaintiff had a copy of the summary plan description of the Defined Contribution Plan, which states that the employer makes the contributions to the Plan (Pl.Ex. 3) and told Dr. Kaupp that she should not have to fund her own pension. Nevertheless, Lehigh Valley used a portion of her receivables percentage to fund her contribution to the Defined Contribution Plan. (Pl. Test. Tr. 11/23/92 at 19.)

In 1980 Lehigh Valley eliminated the portion of Plaintiff's compensation that was calculated on the basis of Lehigh Valley's gross receipts thus reducing Plaintiff's compensation from $18,358 for the fiscal year ending June 30, 1979 to $14,429 for the fiscal year ending August 31, 1980. (Lehigh Valley had changed its fiscal year from July to June to September to August.) Based upon a salary of $19,000, Lehigh Valley would have to contribute approximately $10,000 on behalf of Plaintiff into the newly formed Defined Benefit Plan. The doctors felt that this amount was too much. (Lisicky Test. Tr. 11/23/92 at 128.) Therefore, they reduced her salary to $14,400, thus requiring Lehigh Valley to contribute only $5,500 to the Defined Benefit Plan. (*Id.* at 131.) By virtue of the elimination of her receivables percentage, Plaintiff was taking her salary and funding her Defined Benefit Plan. (*Id.*)

Drs. McDonald and Kaupp told Plaintiff that she would no longer receive annually the lump sum check based upon the corporation's gross receipts, and that this amount would be used by Defendants to fund her contribution to the new Defined Benefit Plan. They assured Plaintiff that the salary reduction was in her best interests because she would receive a monthly pension benefit equivalent to her full salary upon retirement. (Pl. Test. Tr. 11/23/92 at 21–24.) In 1980, when the doctors told Plaintiff that her compensation would be reduced and that the corporation was implementing the Defined Benefit Plan retroactive to September 1, 1979, Plaintiff was unhappy and expressed that unhappiness to Dr. Kaupp. (*Id.* at 23–24.)

Plaintiff's biweekly salary checks remained $601.20 from September 1, 1979 to August 31, 1984 (the period that the Defined Benefit Plan was in effect). Because the contributions to the Defined Contribution Plan and the benefits under the Defined Benefit Plan were based on salary, the reduction of her salary by virtue of the elimination of the receivables percentage reduced contributions to Plaintiff's account under the Defined Contribution Plan and reduced her benefits. The salary reduction also reduced her Defined Contribution Plan and Defined Benefit Plan pension benefits. (Lisicky Test.; Pl.Ex. 104.)

Lehigh Valley never told Plaintiff that the Defined Benefit Plan required the employer to make the contributions to the Plan. (Pl. Test. Tr. 11/23/92 at 27.) Lehigh Valley gave Plaintiff a copy of the summary plan description, but the pages regarding contributions to the Plan, insurance, and the table of contents were missing. These missing pages would inform Plaintiff that the employer was required to make the contributions to fund the Plan. (Pl. Test. Tr. 11/23/92 at 29–30; Pl.Ex. 1.) Plaintiff did not receive a complete summary plan description until 1987.

### E. Designation of Compensation as Salary and Bonus

Effective for the year 1980, Lehigh Valley designated Plaintiff's compensation into two components: "salary" and "bonus." (Pl. Test. Tr. 11/23/92 at 25–26.) Similarly, Lehigh Valley divided the compensation of Drs. Kaupp and McDonald into the same components. (Lisicky Test. Tr. 11/23/92 at 126–27.) Because benefits under the Defined Benefit Plan were based on salary excluding any bonus, this reduced the amount of the benefit under the Plan and thus the amount of money Lehigh Valley contributed to the Plan to fund the benefits. Plaintiff was not notified that designating a portion of her compensation as a bonus would have the effect of reducing her pension benefits. (Pl. Test. Tr. 11/23/92 at 101.)

### F. Life Insurance

The Defined Benefit Plan provided for an additional benefit of life insurance for each participant equal to 30.58 times the participant's monthly retirement benefit. (Pl.Ex. 2 § 6.1.) On October 21, 1980 Lehigh Valley amended the Defined Benefit Plan to cancel the life insurance benefit for Plaintiff, while increasing the amount of life insurance for all other participants. (*Id.* amend. attached.) The reason given was to save money. (Leo Riley Test. Tr. 11/24/92 at 48.) The amendment, however, eliminated the life insurance benefit only for employees over age 56, and at the time of the amendment, Plaintiff was the only participant over 56. (Ct. Ex. 1 ¶ 15.) The amendment also more than tripled the amount of life insurance for all other partici-

pants, and provided insurance equal to 95.57 times the participant's monthly retirement benefit. Plaintiff never received notice of this amendment. On November 4, 1980 Lehigh Valley sent to the Internal Revenue Service a copy of the amendment to section 6.1 of the Defined Benefit Plan. (Def. Ex. 2.) On November 26, 1990 the Internal Revenue Service approved the amendment. (Def. Ex. 3.)

### G. *Pension Benefits Not Distributed to Plaintiff*

Plaintiff was assured repeatedly by Defendant McDonald and others acting on his behalf that her pension benefits under both the Defined Contribution Plan and the Defined Benefit Plan would be distributed to her upon her retirement. (Pl. Test. Tr. 11/23/92 at 34.) Beginning in June 1984, Plaintiff gave frequent and repeated notices to Lehigh Valley that she intended to retire on August 31, 1984. Before August 31, 1984, Plaintiff postponed her retirement date until January 2, 1985, and gave notice to Lehigh Valley. (Pl. Test. Tr. 11/23/92 at 31–35.) Although Plaintiff retired on January 2, 1985, Defendants did not distribute her benefits to her in 1985. Instead, they provided a series of excuses. (Pl. Test.) Defendants, however, in March 1985, paid $50,000 under the Defined Benefit Plan as a partial distribution to Dr. Kaupp pursuant to a request of his attorney. (Pl.Ex. 21; Edward H. Butz Test. Tr. 11/24/92 at 102–103.)

In April 1985 McDonald informed Plaintiff that Lehigh Valley could not distribute her pension benefits to her because of a "financial squeeze" on the corporation. (Pl.Ex. 19.) By May 15, 1985 McDonald had resolved the financial squeeze and fully funded the Plans. (McDonald Test. Tr. 11/24/92 at 157–161.) Nevertheless, Defendants failed to pay to Plaintiff her pension benefits. Instead, Mark Baicker, one of Lehigh Valley's pension advisers, advised Plaintiff in July 1985 that payment would not be made pending approval by the IRS of the termination of the Defined Benefit Plan and completion of some accounting matters relating to the Defined Contribution Plan. Baicker suggested to Plaintiff that she make a written request for payment of her pension benefits, but Plaintiff did not because she had made a written request for benefits in October 1984. (Def. Ex. 8; Pl. Test. Tr. 11/23/92 at 104–105.)

Although the IRS approved the termination of the Defined Benefit Plan in December 1985 (Def. Ex. 9), Defendants did not advise Plaintiff of the approval until February 1986, at which time they promised her, without condition or limitation, a full distribution from both the Defined Benefit and Defined Contribution Plans by the end of the month, which Defendants failed to do. (Pl. Ex. 25.) Instead, on July 18, 1986 Defendants required Plaintiff to sign releases as a condition of payment. Defendants requested and obtained signed releases from all other participants. (Def. Exs. 15, 18; Butz Test. Tr. 11/24/92 at 99–104, 112.) Defendants requested releases as a condition of distributions from both Plans because McDonald had become the sole trustee of both Plans and had not been involved in some of the earlier transactions and management of the Plans. (Butz Test. Tr. 11/24/92 at 100–101.) By letters of July 21, 1986 Defendants gave Plaintiff an accounting for both Plans. (Pl. Ex. 16; Def. Ex. 79.) Plaintiff refused to sign the releases and Defendants refused to pay any benefits to Plaintiff. (Pl. Test. Tr. 11/23/92 at 43–46; Butz Test. Tr. 11/24/92 at 135–36.)

In April 1987 Defendants informed Plaintiff that they would pay her benefits under the Defined Benefit Plan in the form of an annuity or a single sum payment and they asked Plaintiff to choose which she desired. Defendants again requested a release, which Plaintiff refused to sign. (Pl.Ex. 30.) In May 1987 Plaintiff requested distribution of both her Defined Benefit and Defined Contribution Plan benefits without execution of a release. (Pl.Ex. 31.) In July 1987 Defendants sent Plaintiff a check in the amount of $42,986.24, which they stated represented Plaintiff's complete entitlement under the Defined Benefit Plan. (Pl.Ex. 27.) Defendants did not request a release for the $42,-986.24 payment because the Plan had been terminated with IRS approval. (Butz Test. Tr. 11/24/92 at 109–110.) On July 28, 1987 Plaintiff requested an explanation from Defendants of the basis of the $42,986.24 pay-

ment, (Pl.Ex. 110), but Defendants to date have not supplied an explanation.

Defendants have not paid Plaintiff her pension benefits under the Defined Contribution Plan. (Pl. Test. Tr. 11/23/92 at 53; McDonald Test.; Ct. Ex. 1 ¶¶ 25, 26.) Defendants were prepared to distribute Plaintiff's benefits under the Plan in July or August of 1987 without a release, (Butz Test. Tr. 11/24/92 at 113–115), but Defendants declined to do so when Plaintiff's counsel delivered to counsel for Defendant McDonald Plaintiff's list of "demands" relative to both Plans. (Def. Ex. 25, 26.) Defendants again insisted on a release from Plaintiff. (Butz Test. Tr. 11/24/92 at 115–120.)

## H. *Defendants' Transfer of Plaintiff's Defined Contribution Plan Investments*

Plaintiff deposited her Defined Contribution Plan monies into funds maintained for her benefit at Dean Witter and Gruntal. Plaintiff, consistent with the Plan, self-directed these accounts. (Pl.Ex. 4; Pl. Test. Tr. 11/23/92 at 14–15; Wally Rebar Test. Tr. 11/25/92 at 22–27.) In July 1987 Plaintiff's accounts with Gruntal consisted of approximately $27,000 of stocks and $36,000 in a money market account. Plaintiff also had two money market accounts with Dean Witter.

In October 1984, Plaintiff requested that, upon her retirement, Defendants distribute her pension benefits under both Plans "in kind." (Pl. Test. Tr. 11/23/92 at 47.) Under an in kind distribution, Plaintiff would receive the actual securities held. On May 22, 1987, however, Plaintiff requested that Lehigh Valley pay her benefits under both Plans as a "single sum" distribution for rollover into an Individual Retirement Account. (Pl.Ex. 31.) Plaintiff inadvertently made no reference in that letter to an in kind distribution. (Pl. Test. Tr. 11/23/92 at 91–92.) McDonald forwarded Plaintiff's letter to Lehigh Valley's pension advisors. They told McDonald to instruct Dean Witter and Gruntal to close Plaintiff's accounts under the Defined Contribution Plan and to send McDonald checks from the proceeds. (Pl.Ex. 62.) McDonald wrote to Dean Witter and telephoned Mr. Wally Rebar of Gruntal and

directed them to sell Plaintiff's stocks and close her account. Rebar then telephoned Plaintiff who stated that she did not want her stock portfolio sold. Rebar then relayed Plaintiff's statement to McDonald. (Trans. 11/24/92 at 12–13.) Confronted with these conflicting instructions, McDonald telephoned his pension advisors who stated that the only way to provide Plaintiff with a lump sum distribution was to sell her stocks and pay her the proceeds. McDonald then telephoned Rebar and instructed him to sell Plaintiff's stocks. (*Id.* at 13.) The stocks were sold in July 1987 and although Plaintiff expressed her unhappiness, (Pl.Ex. 38), she did not direct McDonald to buy back the stocks. (Pl. Test. Tr. 11/23/92 at 92–94.)

On July 22, 1987 Dean Witter and Gruntal issued three checks payable to Lehigh Valley for the benefit of Plaintiff. McDonald endorsed the checks over to Plaintiff. (Pl.Ex. 11.) Lehigh Valley was prepared to give those checks to Plaintiff, but when Plaintiff's counsel delivered a letter to Defendants' counsel on August 5, 1987 setting forth the losses that Plaintiff had allegedly incurred (Def. Exs. 25, 26), Lehigh Valley refused to give Plaintiff the checks until she signed a release. (Butz Test. Tr. 11/24/92 at 114–16.) McDonald then directed that the two checks from Dean Witter be deposited in a new money market account in the name of Lehigh Valley Vascular Surgeons, Ltd. Retirement Plan, Kenneth M. McDonald, Trustee and that the new account not show Plaintiff's name. (Pl.Ex. 10.) The Gruntal check was also placed in a money market account. (McDonald Test. Tr. 11/24/92 at 22.) McDonald chose a money market account because he believed that it was the safest investment mechanism. (*Id.* at 23.) Defendants refused to pay Plaintiff these funds without a release. (Def. Ex. 70; Pl. Test.; Ct. Ex. 1 ¶ 26.)

## I. *Administrative Fees*

Section 11.3 of both Plans provides that "[a]ny reasonable expenses incurred in the administration of this Trust shall be chargeable to and paid by the Trust Fund; provided that the Employer may pay all or any part of such expenses, but shall have no obligation to do so." (Pl.Ex. 2, 4.) Defendants charged Plaintiff a total of $686.86

administrative fees for both Plans for 1985 and 1986. (Def. Exs. 16, 79.) McDonald told Plaintiff that she would not be charged administrative fees. Later, McDonald told Plaintiff that she would be charged administrative fees, but that he would reimburse Plaintiff in the form of a bonus. Plaintiff did not receive any reimbursement. (Pl. Test. Tr. 11/23/92 at 28.)

### J. *Damages*

The amount, including prejudgment interest, of Plaintiff's lost salary used to fund the Defined Benefit Plan is $137,790. (Pl.Ex. 104; Lisicky testimony.)

The amount, including prejudgment interest, of Plaintiff's lost benefits under the Defined Contribution Plan as a result of the reduction of Plaintiff's salary is $37,892. (*Id.*)

The amount, including prejudgment interest, of Plaintiff's lost benefits under the Defined Benefit Plan as a result of the underfunding of the Plan because of the reduction of Plaintiff's salary is $62,072. (*Id.*)

The amount including prejudgment interest, of Plaintiff's Defined Contribution Plan distribution that she has never received is $142,145.99. (Pl.Ex. 108.)

The paid up value of the life insurance benefits under both Plans is $42,996.

Pursuant to 29 U.S.C. § 1132(c), $100 a day from August 27, 1987 (30 days after July 28, 1987) for Defendants' failure to provide an accounting of Plaintiff Defined Benefit Plan distribution.

## II. Discussion

### A. *Standard of Review*

■ Plaintiff brings this action pursuant to ERISA, 29 U.S.C.A. § 1132(a)(1)(B) (West 1985), to recover lost salary and benefits owed to her under the terms of the Plans and to enforce her rights under terms of the Plans. The standard of review for actions brought under section 1132(a)(1)(B) is a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80

(1989). In the latter situation, the court should apply an arbitrary and capricious standard of review.

Defendants argue that the Court should apply the arbitrary and capricious standard of review. They point to the definition of fiduciary in both the Defined Contribution and Defined Benefit Plan as any person who "exercises any discretionary authority or discretionary control respecting management of" the Plans. § 2.21 of both Plans. This language parallels the definition of fiduciary in ERISA itself. 29 U.S.C.A. § 1002(21)(A). In *Firestone*, however, the Court rejected Firestone's argument that as a matter of trust law interpretation of a benefit plan is an inherently discretionary function. Rather, under trust law the de novo standard is the norm. 489 U.S. at 112, 109 S.Ct. at 955. The Court stated that ERISA contains much language regarding the discretionary function of trustees, but rejected Firestone's argument that the definition of fiduciary in ERISA mandated an arbitrary and capricious standard of review. *Id.* at 113–14, 109 S.Ct. at 955–56.

Defendants also point to language in the Plans regarding the powers of the trustees to invest the funds, § 7.2, regarding the broad based powers of the trustees in general, § 11.5, and limiting the liability of the trustees for making investments or for losses to, or diminution of the trust funds. § 11.11. The language cited by Defendants, however, has nothing to do with determining eligibility for benefits or construing the terms of the Plans. Where federal courts have applied the arbitrary and capricious standard of review, the plans at issue have contained some explicit delegation of authority to the plan administrator to determine eligibility for benefits or to construe the plan terms. *See, e.g., Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452–53 (D.C.Cir.1992) (arbitrary and capricious standard applied where plan vests in administrative committee the power "to interpret and construe the Plan [and] to determine all questions of eligibility and status and rights of participants" and where committee decisions "shall, to the extent not inconsistent with the provisions of the Plan, be final and conclusive and binding upon all

persons having an interest in the Plan."); *Lowry v. Banker Life & Casualty Retirement Plan,* 871 F.2d 522, 524 (5th Cir.), *cert. denied,* 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989) (arbitrary and capricious standard applied where plan document gave authority to the plan committee to (a) "interpret and construe" the Plan, (b) "to determine all questions of eligibility and status under the Plan," and (c) to "determine all questions arising in the administration of the Plan, including the power to determine the rights of eligibility of Employees and Participants and their beneficiaries, and the amounts of their respective interests," and the plan documents provided that the committee's determinations were binding on all persons subject to the claims procedures set forth in the plans.) There is no language in the Defined Contribution Plan or the Defined Benefit Plan here that is similar to the language of the plans in *Block* and *Lowry.* Because neither of the plans give the administrator or the trustee discretionary authority to determine Plaintiff's eligibility for benefits or to construe the terms of the plans, the Court will review Defendants' actions under a de novo standard of review.

### B. *Elimination of Plaintiff's Receivables Percentage*

Plaintiff first claims that Defendant Lehigh Valley breached its fiduciary duties by using a portion (approximately 20 percent) of Plaintiff's receivables percentage to fund Plaintiff's Defined Contribution Plan benefits from 1975 to 1979, thereby forcing Plaintiff to make a portion of the contribution to the Plan, in violation of the Plan document that states that the employer makes the contributions to the trust fund. Defined Contribution Plan §§ 4.1, 4.2. Plaintiff next claims that Defendant Lehigh Valley breached its fiduciary duties by completely eliminating the receivables percentage in 1980, using this money to fund her Defined Benefit Plan, thus in effect forcing Plaintiff to make the contribution to the trust fund, in violation of the Plan document. Defined Benefit Plan art V.

Under ERISA, a fiduciary must discharge his duties in the interests of the participants and beneficiaries of the plan and in accordance with the documents and instruments governing the plan. 29 U.S.C.A. § 1104(a)(1)(D) (West Supp.1992). Plaintiff claims that Defendants disregarded the documents governing the Plans by requiring Plaintiff to make the contributions to the Plans. Defendants contend that Plaintiff's claims are barred by ERISA's statute of limitations. Defendants also assert that because Plaintiff was an employee-at-will, Lehigh Valley had the right to reduce her compensation at any time.

ERISA bars actions for breach of fiduciary duty

> after the earlier of (1) six years after ... the date of the last action which constituted a part of the breach or violation, ... or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C.A. § 1113 (West Supp.1992). Thus, the general rule is that a plaintiff must bring her action for breach of fiduciary duty within six years of the date of the last action that constituted a part of the breach. If the plaintiff had actual knowledge of the breach or violation, however, then the statute of limitations is three years. These two provisions are negated, however, if the defendant engages in fraud or concealment. In the case of fraud or concealment, the plaintiff may bring her action within six years after she discovers the breach or violation. *Brock v. Nellis,* 809 F.2d 753, 754–55 (11th Cir.), *cert. denied,* 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987). To apply section 1113, the Court must first determine the date of the last action which formed a part of the breach and then must determine the date of Plaintiff's actual knowledge of the breach. *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1178 (3d Cir.1992).

With respect to Plaintiff's claim of being forced to contribute to the Defined Contribution Plan from 1975 to 1979 out of her receivables percentage, the date of the last action which formed a part of the breach or violation occurred in 1979, more than six years before Plaintiff commenced this action on

February 28, 1988. Therefore, her claim is barred by the statute of limitations unless Defendants engaged in fraud or concealment with respect this claim.

The Third Circuit has not addressed what constitutes fraud or concealment for the purpose of section 1113. The Seventh Circuit has stated that "[t]here must be actual concealment—i.e., 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992) (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807 (1879)). The Eighth Circuit has held that section 1113 "incorporates the 'fraudulent concealment doctrine,' which requires that plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) they were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence." *Schaefer v. Arkansas Medical Society*, 853 F.2d 1487, 1491–92 (8th Cir. 1988).

■ Defendants did not engage in fraud or concealment with respect to Plaintiff's claim regarding the Defined Contribution Plan from 1975 to 1979. Defendants provided Plaintiff with a complete copy of the summary plan description that stated that the employer makes the contributions to the Plan. Plaintiff was aware of this provision and was aware that a portion of the receivables percentage was used to fund her Plan.

■ With respect to Plaintiff's claim regarding the complete elimination of the receivables percentage and the use of that money to fund the Defined Benefit Plan, the Court must identify the date of the last action that constituted the breach of fiduciary duty. Defendants claim that one and only one action occurred—the elimination of the receivables percentage in 1980. Therefore, Defendants state that the six year statute of limitations expired in 1986, two years before Plaintiff filed her action. Defendant Lehigh Valley's elimination of Plaintiff's receivables bonus cannot be characterized as a one time reduction. Lehigh Valley eliminated Plaintiff's receivables bonus in 1980 dropping her salary from approximately $19,000 in fiscal year 1979 to approximately $14,400 in fiscal year 1980. From September 1, 1979 to August 31, 1984 Plaintiff's biweekly salary checks remained constant at $601.20. Lehigh Valley used this figure as Plaintiff's "salary" as defined in the Defined Benefit Plan to calculate the amount that it needed to contribute to the trust fund to fund Plaintiff's retirement benefit. Therefore, Plaintiff was in effect forced to fund her own Defined Benefit Plan from 1979 to 1984. Defendants Lehigh Valley engaged in a continuing violation of their fiduciary duties from 1979 to 1984, and therefore Plaintiff's claim is not time barred under the six year provision of section 1113.

Defendants contend that Plaintiff had actual knowledge of the breach of fiduciary duty in 1980 when Lehigh Valley informed her that they were eliminating her receivables percentage and using that money to fund her benefit under the newly formed Defined Benefit Plan, and that therefore the three year provision of section 1113 applies and bars Plaintiff's claim. To prove that Plaintiff had actual knowledge of the breach of fiduciary duty or violation of ERISA, Defendants must prove that Plaintiff had "actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, ... knowledge of a transaction's harmful consequences, ... or even actual harm." *Gluck v. Unisys*, 960 F.2d 1168, 1177 (3d Cir.1992). The Third Circuit, however, emphasized that their holding did "not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer." *Id.*

■ Plaintiff did have actual knowledge in 1980 that Lehigh Valley eliminated her receivables percentage, and suffered actual harm when her compensation was reduced. *Gluck,* however, requires not only that Plaintiff knew of the events that occurred which constitute the breach of fiduciary duty, but also knew that those events supported a claim of breach of fiduciary duty or violation under ERISA. *International Union of Electronic, Electric, Salaried, Machine and Furniture Workers v. Murata Erie North America, Inc.*, 980 F.2d 889, 900 (3d Cir.1992). In

that case, Murata provided notice to the plaintiffs in October 1985 that it had amended the pension plan, but the notice did not discuss the content of the amendment. The court held that the plaintiffs did not have actual knowledge of a potential breach of fiduciary claim in 1985. *Id.* at 901. Here, when Lehigh Valley implemented the Defined Benefit Plan in 1980, they· provided Plaintiff with a summary plan description. That summary, however, was missing the pages that· stated that the employer makes the full required contribution to the Plan on the employee's behalf. Plaintiff, therefore, did not have actual knowledge of all the material facts necessary to understand that she had a claim for breach of fiduciary duty or violation of ERISA in 1980. Defendants did not give Plaintiff a choice with respect to participating in the Defined Benefit Plan and never informed her that· the employer, not the employee, was required to make the contributions to the Plan. Plaintiff did not know that the employer was required to make the contributions to· the Defined Benefit Plan until 1987 when she requested, and received, a copy of the complete Plan document itself. Plaintiff's claim with respect to the elimination of her receivables percentage and funding her own Defined Benefit Plan, therefore, is not barred by the statute of limitations.

Defendants argue that because Plaintiff was an employee at will Lehigh Valley was entitled to alter her terms and conditions of employment at any time. Plaintiff accepted the terms of her employment after the elimination of her receivables percentage by continuing to work for the corporation. Defendants contend that the monies used to fund the Defined Benefit Plan did not belong to Plaintiff because she had ·no legal right or entitlement to them.

■  In Pennsylvania, there is a presumption that the employment relationship is at will. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). Without a contractual provision to the contrary, either party can terminate that relationship for any reason or for no reason at any time. *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571, 577 (1986). Plaintiff bears the burden of overcoming the strong presumption of employment at will. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 600 (3d Cir. 1990). Here, there was no written employment agreement. Nevertheless, simply because Plaintiff's employment was at will does not entitle Lehigh Valley to violate ERISA. The Defined Benefit Plan required the employer to make the contributions to fund the pension benefits. Instead, Lehigh Valley reduced Plaintiff's salary by eliminating the receivables percentage in order to reduce the amount that it would have to contribute to fund her pension. In effect, Plaintiff funded her own pension benefit. Therefore, Defendants Lehigh Valley and McDonald breached their fiduciary duties by failing to act in accordance with the terms· of the Defined Benefit Plan.

■  Because the contributions to the Defined Contribution Plan and the benefits under the Defined Benefit Plan were based on salary, the reduction in Plaintiff's salary by virtue of the elimination of the receivables percentage reduced Lehigh Valley's contributions to Plaintiff's account under the Defined Contribution Plan and reduced her benefit under the benefit formula under the Defined Benefit Plan. The salary reduction not only reduced Plaintiff's salary, but also reduced her Defined Contribution Plan and Defined Benefit Plan pension benefits. Defendants are liable to Plaintiff for the lost salary and pension benefits.

### C.  Designation of Plaintiff's Compensation as Salary vs. Bonus

The Defined Benefit Plan excluded bonuses from the definition of compensation used to calculate a participant's benefit under the Plan. § 2.10. From September 1, 1979 to August 31, 1984, the effective dates of the Plan, Plaintiff's salary used to calculate her benefit remained $14,428. Plaintiff did receive additional compensation during those fiscal years, designated as bonuses. Plaintiff states that because the definition of compensation excluded bonuses, this had the effect of reducing her pension benefits and the amount of contribution by Lehigh Valley to fund her benefits.

An employer does not violate ERISA simply by defining compensation to include certain items and to exclude others. *Davidson v. Canteen Corp.*, 957 F.2d 1404, 1406 (7th Cir.1992). In *Davidson,* the defendant established a retirement plan in 1985. The defendant amended the plan in 1986, without providing any notice to any participant, to exclude from the definition of compensation any income resulting from participation in the company's stock option plan. The change was made retroactive to January 1, 1986. The plaintiffs received oral notice of the change in October 1986. The plaintiffs received less benefits under the plan because of the change. The Court held that the defendants violated section 204(h) of ERISA, 29 U.S.C.A. § 1054(h) (West Supp.1992) which prohibits amendments to a pension plan without notice to the participants in advance of when the amendments will take effect. The court stated that "[i]t is not wrong for an employer to exclude the income from exercising stock options from the calculation of pension benefits. But to do [so] without adequate notice, after assuring its employees that such income will count toward their pensions, will, in almost all cases, reduce, and reduce significantly, those employees' pension benefits. Such a change violates § 204(h)." *Id.*

In this case, Lehigh Valley established the Defined Benefit Plan in 1980, effective September 1, 1979, which excluded bonuses from the definition of compensation. Lehigh Valley did not amend an existing plan. Therefore, section 204(h) does not apply. Nevertheless, when Lehigh Valley established the Plan, they assured Plaintiff that she would receive a pension benefit equal to her salary upon retirement. Because Defendants Lehigh Valley and McDonald failed to inform Plaintiff that characterizing a portion of her compensation as a bonus would reduce significantly her pension benefits, they breached their fiduciary duties under ERISA.

### D. *Elimination of Plaintiff's Life Insurance Policy*

Section 510 of ERISA provides, in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C.A. § 1140 (West 1985). Congress enacted this provision to protect an employment relationship that gives rise to an individual's rights under an employment benefit plan. The legislative history of this provision reveals that Congress enacted section 510 "primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).

To recover under section 510, a plaintiff must prove that the defendant had the specific intent to engage in proscribed activity. *Id.* As in the case of employment discrimination actions under Title VII of the Civil Rights Act of 1964, a plaintiff alleging discrimination under ERISA bears the burden of establishing a prima facie case of discrimination. To establish a prima facie case of discrimination under section 510 of ERISA, "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.* at 852. Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to introduce admissible evidence of a legitimate, nondiscriminatory reason for its challenged actions. *Id.* at 853. If the employer carries this burden of production, the employee must demonstrate that the employer's articulated reason is pretextual. *Id.*

Plaintiff has established that Lehigh Valley amended the Defined Benefit Plan to eliminate the life insurance benefit for those participants over age 56. At the time of the amendment, Plaintiff was the only participant over age 56 and, therefore, the only

person whose benefit was eliminated. Lehigh Valley stated that it amended the plan to save money. While the mere elimination of pension benefits to save money does not, in and of itself, constitute a violation of section 510, the particular facts and circumstances in this case lead to the conclusion that Defendants Lehigh Valley and McDonald violated that provision. Doctors Kaupp and McDonald amended the life insurance benefit to triple the face amount of the policy from 30.58 times the monthly pension benefit to 95.57 times the monthly pension benefit. This renders the employer's stated reason for the elimination of the benefit for employees over age 56—to save money—unworthy of belief. Furthermore, the doctors chose an age cut-off of 56, just one year below Plaintiff's age at the time of the amendment, while making sure that they would not be affected by the amendment. Thus, Defendants Lehigh Valley and McDonald had the specific intent of interfering with Plaintiff's attainment of a life insurance policy under the Defined Benefit Plan when they amended the Plan in October 1980.

### E. *The Delay in Paying Plaintiff Benefits*

Plaintiff contends that Defendants Lehigh Valley and McDonald breached their fiduciary duties under section 1104(a)(1)(D) by failing to distribute Plaintiff's pension benefits to her in a timely manner pursuant to the Plans.

Under the Defined Contribution Plan the normal retirement date is the anniversary of participation nearest to a participant's sixty-fifth birthday. Pl.Ex. 4 § 2.14. The Plan allows an employee to elect to retire within five years of her normal retirement date (early retirement). § 6.5. The Plan provides that the normal retirement benefit payable to a participant "commencing on any retirement date," shall be a qualified joint and survivor annuity, § 6.1, but "[a] Participant may elect to take a form of distribution other than that described in Section 6.1 upon his normal, early or late retirement." § 6.11. Plaintiff elected to take an early retirement by written notice to Lehigh Valley in October

1984 and also requested that her benefits be distributed to her on January 2, 1985. Plaintiff was eligible to take an early retirement because she was within five years of age sixty-five at the time.[1] Plaintiff retired on January 2, 1985, even though she worked one day per week or less for Lehigh Valley until December 16, 1986, and therefore she was entitled to receive her benefits.

In April 1985, Dr. McDonald informed Plaintiff that a financial squeeze on Lehigh Valley prevented the corporate contribution to the Plan. In July 1985 Lehigh Valley's pension advisors informed Plaintiff that they were attempting to clarify some accounting matters relating to the Plan. In February 1986 the attorney for Dr. McDonald informed Plaintiff that the annual accounting and reporting requirements for the year ending August 1985 had to be completed before distribution of her Defined Contribution Plan benefits and this would be done by late February. Finally, on July 18, 1986 Lehigh Valley informed Plaintiff that it was prepared to distribute benefits to her, but first she must execute a release. The release provided that in consideration for payment to Plaintiff of the amount of her Defined Contribution Plan benefit, Plaintiff would release the Defined Contribution Plan, Lehigh Valley, the Plan administrator, the Plan trustee, and all other Plan fiduciaries from all claims past, present, and future for any cause in connection with the Plan. Pl.Ex. 37. Defendants modified the language of the release in November 1987 to provide: "This release shall not extend to or affect any rights, claims or causes of action I may have against the parties listed above for payment of my accrued, vested benefits as defined in and payable to me according to the terms of the Plan." Def. Ex. 70. Plaintiff claimed that nothing in the Plan nor ERISA requires the execution of a release as a prerequisite for obtaining pension benefits and that the Plan's and McDonald's attempt to obtain a release from liability to Plaintiff violates section 410(a) of ERISA, 29 U.S.C.A. § 1110(a) (West 1985).

■■■■ Courts have held that a fiduciary's imposition of conditions not contained in

---

[1]. Although the record before the Court does not provide Plaintiff's date of birth, the parties' sub-missions state that Plaintiff turned age sixty-five in 1987.

a plan's language is arbitrary and capricious and a violation of ERISA. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1354 (9th Cir. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *accord Dennard v. Richards Group, Inc.,* 681 F.2d 306, 318 (5th Cir.1982); *Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir.1981). These cases did not involve releases. Nevertheless, nothing in the Defined Contribution Plan or ERISA states that Plaintiff is required to execute a release to receive a distribution of her pension benefits. Conditioning the distribution of Plaintiff's benefits upon the execution of a release under the circumstances of this case violates Defendants' fiduciary duties.

▮▮▮▮ In addition, the release would be unenforceable under section 410(a) of ERISA, which provides, in part, that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the fiduciary responsibility sections] shall be void as against public policy." 29 U.S.C.A. § 1110(a) (West 1985). The Third Circuit has not addressed the issue of whether this section prohibits the release of a fiduciary from past, present, and future claims relating to the administration of an ERISA plan. The Court concludes that releases are instruments or agreements within the meaning of section 1110(a) and that Defendants violated ERISA by conditioning the distribution of benefits to Plaintiff on her execution of a release, and thus Defendants failed to pay Plaintiff benefits to which she was entitled in a timely manner.

With respect to Plaintiff's Defined Benefit Plan benefits, Plaintiff did not qualify for early retirement under the terms of that Plan. The Plan required the participant to attain age sixty and complete sixteen years of service to be eligible for early retirement. § 4.3. Plaintiff had not completed sixteen years of service on January 2, 1985. Lehigh Valley, however, terminated the Defined Benefit Plan pursuant to section 9.2 of the Plan and terminated the Plan's trust fund pursuant to section 9.3 which required distribution of Plaintiff's benefits. In July 1986 Lehigh Valley, however, required Plaintiff to execute a release as a condition of receiving her benefits. Pl.Ex. 36. This violated ERISA because it imposed a condition on the receipt of benefits not contained in the Plan.

### F. *Administrative Fees*

▮▮▮ Section 11.3 of the both Plans provides that "[a]ny reasonable expenses incurred in the administration of this Trust shall be chargeable to and paid by the Trust Fund; provided that the Employer may pay all or any part of such expenses, but shall have no obligation to do so." Pl.Ex. 2, Pl.Ex. 4 § 11.3. McDonald told Plaintiff that she would not be charged administrative fees. Later, McDonald told Plaintiff that she would be charged administrative fees, but that he would reimburse Plaintiff in the form of a bonus. Plaintiff did not receive any reimbursement.

Section 403(c) of ERISA provides that the assets of a plan "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C.A. § 1103(c)(1) (West Supp.1992). Plaintiff has failed to prove that the administrative fees that Lehigh Valley deducted from Plaintiff's accounts under the Plans for 1984 and 1985 were unreasonable, inappropriate, or discriminatorily imposed. Dr. McDonald's promises that the employer would pay administrative fees are unenforceable oral modifications to the terms of the Plans. *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1163 (3d Cir. 1990).

### G. *Failure to Provide an "Accounting"*

ERISA provides that a court may hold an administrator liable to a plan participant in the amount of up to $100 per day from the date of an administrator's failure or refusal to comply with a plan participant's request for information that an administrator is required to provide according to the statute. 29 U.S.C.A. § 1132(c)(1)(B) (West Supp. 1992). On July 28, 1987 Plaintiff's attorney wrote to the attorney for Defendants seeking, among other things, an explanation and accompanying calculations to support the amount of the July 9, 1987 check to Plaintiff in the amount of $42,986.24 which represent-

ed Plaintiff's benefits under the Defined Benefit Plan. Pl.Ex. 110. Lehigh Valley to date has not provided Plaintiff with the explanation that she sought.

■ Section 105 of ERISA obligates the administrator of an employee pension benefit plan to furnish

to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information—

(1) the total benefits accrued, and

(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

29 U.S.C.A. § 1025(a) (West 1985). Lehigh Valley contends that it complied with this provision, even before Plaintiff made a written request, because the cover letter that accompanied the check states that the $42,-986.24 "represents the total vested benefits" due to Plaintiff under the Defined Benefit Plan. Pl.Ex. 27. With respect to section 1025(a), the Third Circuit has stated:

If a participant or beneficiary who has a pressing need for an accounting at a significant time, such as upon termination of employment, disability, or vesting, is unable to receive it upon a request, his or her financial planning would be impaired and his or her effort to enforce the rights and fiduciary obligations imposed by ERISA would be severely hampered.... The legislative history shows that the drafters of ERISA believed that individualized reporting and disclosure would play an important role in effectuating ERISA's goals. The accounting provision, which is broadly applicable, must be construed so as to protect the employees' interests.

Barrowclough v. Kidder Peabody & Co., 752 F.2d 923, 933–34 (3d Cir.1985) (citations omitted). While section 1025(a) states only that an administrator must provide a statement stating the total benefits accrued, this provision should be interpreted broadly to accommodate a plan participant's request that the administrator provide the computations to support the amount stated.

■ Lehigh Valley contends that Plaintiff was no longer a plan participant in July 1987 when she made the request for an accounting. The Supreme Court has stated, however, that the term plan participant includes former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989). Plaintiff had a colorable claim for vested benefits under the Defined Benefit Plan when she made her request.

■ Lehigh Valley claims that Plaintiff has failed to demonstrate any prejudice from failing to receive the requested information. The Third Circuit has not held that a participant must show prejudice to receive damages awardable under section 1132(c). Rather, the Third Circuit has emphasized the importance of responding to information requests "to enable claimants to make their own decisions on how best to enforce their rights." *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 153 (3d Cir.1987), *aff'd in part, rev'd in part,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In deciding whether to award damages under section 1132(c), a court should consider whether or not the employer demonstrated bad faith in responding to the request. *Id.; Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084, 1094 (W.D.Pa.1983). Lehigh Valley has never provided Plaintiff with an explanation of how it computed the amount of Plaintiff's Defined Benefit Plan benefits. The Court will award Plaintiff damages in the amount of $100 per day.

### H. Prejudgment Interest

■ Plaintiff requests that the Court award prejudgment interest on the amount of her lost salary and benefits and on the amount of her Defined Contribution Plan benefits withheld from her since 1987. The Supreme Court has held that "[p]rejudgment interest is an element of complete compensation." *West Virginia v. United States,* 479 U.S. 305, 310–11, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987). Although ERISA does not provide specifically for prejudgment interest, the Third Circuit has stated that a

court, in its discretion, may award prejudgment interest for a denial of pension benefits. *Anthuis v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1010 (3d Cir.1992). In the present case it is appropriate to award prejudgment interest to Plaintiff in order to make her whole. Defendants decreased her salary beginning in 1980 in order to fund her interest in the Defined Benefit Plan. Furthermore, Defendants have denied Plaintiff benefits under the Defined Contribution Plan since 1987. Prejudgment interest will make Plaintiff whole for the time that she was denied the use of the money legally due. The appropriate rate for prejudgment interest in ERISA cases is the rate for postjudgment interest set forth in 28 U.S.C. § 1961. *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Kay v. Thrift and Profit Sharing Plan,* 780 F.Supp. 1447, 1462 (E.D.Pa.1991). Thus, sums which Defendants deprived Plaintiff in the years 1980, 1981, and 1982 (prior to the statute's effective date) earn 6 percent interest; sums which Defendants deprived Plaintiff as of August 31, 1983 earn 10.74 percent; and sums which Defendants deprived Plaintiff as of August 31, 1984 earn 11.98 percent. These rates will be applied to Plaintiff's claim for lost salary and benefits. Pl.Ex. 104. Finally, the Court will award Plaintiff prejudgment interest in the amount of 6.96 percent on the amount of her Defined Contribution Plan benefits that Plaintiff has never received. Pl.Ex. 108.

### I. *Attorneys Fees*

■ Both Plaintiff and Defendants have requested attorneys fees and costs. ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C.A. § 1132(g)(1) (West 1985), but does not automatically mandate an award to a prevailing party. *Monkelis v. Mobay Chemical,* 827 F.2d 935, 937 (3d Cir.1987). The factors that a court must consider in determining whether to make an award of attorneys fees under ERISA include:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

*Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir.1983).

■ First, Defendants' culpability supports an award of attorneys fees to Plaintiff. Lehigh Valley reduced Plaintiff's salary, used that money to fund her pension in direct violation of Plan documents, and omitted important pages from a summary plan description. It passed a discriminatory amendment to the Defined Benefit Plan that tripled the face value of all participants' life insurance policies, while totally eliminating Plaintiff. Lehigh Valley should have paid Plaintiff her pension benefits in 1985, but instead delayed payment until 1987 and to date has not paid Plaintiff her Defined Contribution Plan benefits more than eight years after her retirement.

Second, Defendant Lehigh Valley is a successful medical practice and has the financial ability to satisfy an award of attorneys fees. Third, an award of attorneys fees will serve as a deterrent against Lehigh Valley from acting in violation of ERISA in the future. The fourth factor is not relevant under the facts of this case. Finally, Plaintiff has prevailed on the merits on most of her claims. An award of attorneys fees and expenses is appropriate under the facts and circumstances of this case.

■ Defendants ask the Court to award them attorneys fees because the Court granted summary judgment to Defendants on several issues. The Court struck Plaintiff's jury trial demand, held that ERISA preempted Plaintiff's conversion claim, granted summary judgment on some of Plaintiff's discrimination claims, and dismissed Plaintiff's claims for lost profits and punitive damages. Plaintiff did not bring these claims in bad faith. While she would be able to satisfy an award of attorneys fees, and an award would deter others from asserting claims that

lacked merit, the relative merits of the parties' positions in this litigation does not support an award of attorneys fees to Defendants. Plaintiff has prevailed on her core claims at trial and has achieved a significant amount of the relief that she sought. Under all of these circumstances, Plaintiff, not Defendants, is entitled to an award of attorneys fees.

### III. Conclusions of Law

1. This Court has jurisdiction over the subject matter pursuant to ERISA, 29 U.S.C.A. § 1132(e)(1), (f) (West 1985) and over the parties. Venue is proper in this district. § 1132(e)(2).

2. Lehigh Valley's Defined Contribution Plan and Defined Benefit Plan were both, at all times relevant to this action, "employee pension benefit plans" and "pension plans" as defined in ERISA, 29 U.S.C.A. § 1002(2) (West Supp.1992). Defendant Lehigh Valley was the administrator of the Plans as defined in section 1002(16).

3. Defendants McDonald and Lehigh Valley were and are fiduciaries with respect to the Defined Contribution Plan and the Defined Benefit Plan, pursuant to ERISA, 29 U.S.C.A. § 1002(21)(A) (West Supp.1992) and 29 C.F.R. Part 2510.

4. Defendants McDonald and Lehigh Valley, as fiduciaries of the Plans, exercised authority and control respecting management of the Plans.

5. Defendants McDonald and Lehigh Valley, as fiduciaries with respect to the Plans, owed Defined Contribution and Defined Benefit Plan participants and beneficiaries, including Plaintiff, the duty of discharging in good faith their duties with respect to the Plans solely in the interests of the participants and the beneficiaries for the purpose of providing the participants and beneficiaries with benefits in accordance with the documents and instruments governing the Plans. ERISA, 29 U.S.C.A. § 1104(a) (West 1985 & Supp.1992).

6. Plaintiff retired from Lehigh Valley on January 2, 1985.

7. Plaintiff has proven by a fair preponderance of the evidence that Defendants have violated her rights under ERISA and the Plans.

8. Plaintiff has proven by a fair preponderance of the evidence that she is entitled to recover benefits due her under the terms of the Defined Contribution Plan and the Defined Benefit Plan. 29 U.S.C.A. § 1132(a)(1)(B) (West 1985).

9. Plaintiff has proven by a fair preponderance of the evidence that Defendants Lehigh Valley and McDonald have breached their fiduciary duties and violated Plaintiff's rights under ERISA by failing to distribute the benefits due her under the terms of the Plans within the times prescribed by the Plans' instruments.

10. Plaintiff has proven by a fair preponderance of the evidence that Defendants Lehigh Valley and McDonald have breached their fiduciary duties and violated Plaintiff's rights under ERISA by delaying the distribution of Plaintiff's benefits due her under the terms of the Plans and the surrounding circumstances by demanding the execution of releases in return for the payment of these sums.

11. Plaintiff's claim that Defendant Lehigh Valley breached its fiduciary duties and violated the terms of the Defined Contribution Plan by taking a portion of Plaintiff's compensation (the receivables percentage) and using it to fund the Defined Contribution Plan, thereby forcing her to fund the Plan from 1975 to 1979 is barred by the applicable statute of limitations.

12. Plaintiff has proven by a fair preponderance of the evidence that Defendant Lehigh Valley has breached its fiduciary duties and violated the terms of the Defined Benefit Plan by eliminating a portion of Plaintiff's compensation (the receivables percentage) and using it to fund the Defined Benefit Plan, thereby forcing her to fund the Plan.

13. Plaintiff has proven by a fair preponderance of the evidence that Defendant Lehigh Valley has violated section 510 of ERISA, 29 U.S.C.A. § 1140 (West 1985) by discriminatorily amending the Defined Benefit Plan to provide an insurance benefit for all Plan participants except Plaintiff and can-

celing Plaintiff's Defined Benefit Plan life insurance benefits.

14. Defendants did not violate ERISA by deducting administrative fees from Plaintiff's accounts.

15. Plaintiff has proven by a fair preponderance of the evidence that Defendant Lehigh Valley violated ERISA, 29 U.S.C.A. § 1021(a)(1) by failing to furnish to Plaintiff a complete summary plan description of the Defined Benefit Plan and violated section 1025(a) by failing to provide a statement that shows how Lehigh Valley computed Plaintiff's Defined Benefit Plan distribution.

16. Plaintiff has proven by a fair preponderance of the evidence that Defendants Lehigh Valley and McDonald have breached their fiduciary duty and violated Plaintiff's rights under ERISA by designating as a "bonus" a portion of Plaintiff's compensation thus reducing Plaintiff's benefits under the Defined Benefit Plan.

17. Defendants Lehigh Valley and McDonald are liable to Plaintiff for $137,790 for her lost salary that was used to fund the Defined Benefit Plan.

18. Defendants Defined Contribution Plan, Lehigh Valley, and McDonald are liable to Plaintiff for $37,892 for her lost benefits under the Defined Contribution Plan as a result of the underfunding of the Defined Contribution Plan because of the reduction of Plaintiff's salary.

19. Defendants Defined Benefit Plan, Lehigh Valley and McDonald are liable to Plaintiff for $62,072 for her lost benefits under the Defined Benefit Plan as a result of the underfunding of the Defined Benefit Plan because of the reduction of Plaintiff's salary and the characterization of a portion of her compensation as a bonus.

20. Defendants Defined Contribution Plan, Lehigh Valley, and McDonald are liable to Plaintiff for $142,145.99 for the Defined Contribution Plan distribution that she has never received.

21. Defendants are liable to Plaintiff for $42,996 for life insurance coverage under both Plans.

22. Pursuant to ERISA, 29 U.S.C.A. § 1132(c) (West Supp.1992), Defendant Lehigh Valley is liable to Plaintiff for $191,300 representing $100 per day from August 27, 1987 (30 days after Plaintiff's request on July 28, 1987) for failure to provide a statement that shows how Defendants computed Plaintiff's Defined Benefit Plan distribution.

23. Pursuant to ERISA, 29 U.S.C.A. § 1132(g)(1) (West 1985), Plaintiff is entitled to her attorneys' fees and costs.

An appropriate order follows.

## ORDER

In consideration of the foregoing findings of fact, discussion, and conclusions of law:

1. JUDGMENT IS ENTERED in favor of Plaintiff and against Defendants Kaupp Vascular Surgeons, Ltd. Defined Benefit Plan and Trust Agreement, Lehigh Valley Vascular Surgeons Ltd. Retirement Plan, Lehigh Valley Vascular Surgeons, Ltd., and Kenneth M. McDonald, Trustee in the amount of $42,966 for life insurance coverage under both Plans.

2. JUDGMENT IS ENTERED in favor of Plaintiff and against Defendants Kaupp Vascular Surgeons, Ltd. Defined Benefit Plan and Trust Agreement, Lehigh Valley Vascular Surgeons, Ltd., and Kenneth M. McDonald, Trustee in the amount of $62,072 for Plaintiff's lost benefits under the Defined Benefit Plan.

3. JUDGMENT IS ENTERED in favor of Plaintiff and against Defendants Lehigh Valley Vascular Surgeons, Ltd. Retirement Plan, Lehigh Valley Vascular Surgeons, Ltd., and Kenneth M. McDonald, Trustee in the amount of $180,037.99 for Plaintiff's benefits under the Defined Contribution Plan.

4. JUDGMENT IS ENTERED in favor of Plaintiff and against Defendant Lehigh Valley Vascular Surgeons, Ltd. and Kenneth M. McDonald, Trustee in the amount of $137,790 for Plaintiff's lost salary used to fund the Defined Benefit Plan.

5. JUDGMENT IS ENTERED in favor of Plaintiff and against Defendant Lehigh Valley Vascular Surgeons Ltd. in the amount

**268**

of $191,300 for failure to provide information required by ERISA.

6. As set forth above, JUDGMENT IS ENTERED in favor of Plaintiff and against Defendants in the total amount of $614,-165.99.

7. Plaintiff shall file an affidavit setting forth an itemized account of her claim for attorneys fees and expenses within two weeks of the date of the entry of this order by the Clerk. Defendants shall respond within one week of service.

IT IS SO ORDERED.