Eugene SANDLIN, Plaintiff,

v.

IRON WORKERS DISTRICT COUNCIL OF TENNESSEE VALLEY AND VICINITY PENSION PLAN, Defendant.

Civ. A. No. 88–AR–5135–NW.

United States District Court, N.D. Alabama, Northwestern Division.

Dec. 15, 1988.

John B. Baugh, Gonce, Young & Westbrook, Florence, Ala., for plaintiff.

Norman J. Slawsky, Jacobs and Langford, P.A., Atlanta, Ga., pro hac vice, and Thomas N. Crawford, Jr., Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., for defendant.

### MEMORANDUM OPINION

ACKER, District Judge.

The court tried the above-entitled cause without a jury in Florence, Alabama, on November 15, 1988. Plaintiff, Eugene Sandlin, framed his complaint under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, against the Ironworkers District Council of Tennessee Valley and Vicinity Pension Plan, an ERISA-governed pension plan as to which Sandlin was and is a pensioner. Sandlin sought both pension benefits which he

claimed had been wrongfully withheld, and declaratory relief requiring his full restoration to the pension rolls. Lastly he claimed the statutory penalty of damages provided by 29 U.S.C. § 1132(c) for defendant's alleged failure to respond reasonably to Sandlin's request for information.

In his post-trial memorandum, Sandlin concedes that he failed in his burden of proving (1) that he is entitled to recover unpaid pension benefits, or (2) that defendant's current reduction of monthly benefits to make up for an earlier overpayment is not a valid exercise of the pension trustees' discretion. This means that the only issue remaining to be resolved is the issue presented under 29 U.S.C. § 1132(c). The court will limit itself to this issue.

### Findings of Fact

Sandlin was an ironworker until he retired in 1980, whereupon he applied to defendant for a pension after being told by defendant, albeit erroneously, that he had the working credits for a full retirement benefit. The business office in his local union filled out the pension application for his signature. The application, in fact, contained erroneous information about his initiation date. After the application was processed by defendant without incident, Sandlin began receiving his pension checks regularly until February 29, 1987, when he received an enigmatic and somewhat chilling letter telling him that his pension was being discontinued. His checks stopped except for two checks which slipped through by "computer error." These two unexplained checks only compounded Sandlin's fear and frustration. Sandlin called and wrote defendant with considerable persistence, demanding an explanation of the discontinuance of his pension benefits. Sandlin's lawyer followed up when a satisfactory explanation was not forthcoming. All Sandlin received by way of explanation was that his situation was being investigated, perhaps because of erroneous information in his application involving his initiation date. He was not given any details or any real rationale for defendant's drastic adverse action. In particular, he was not told when or if he would ever be restored to the pension roll, even at a lesser monthly amount in order to compensate for any prior overpayment. Neither was he advised of any right of appeal. It was not until after he filed suit on May 22, 1988, that any real explanation was forthcoming and that he started receiving a substantially reduced monthly benefit to compensate for a miscalculated overpayment.

Curtis Pond, one of defendant's trustees, was presented by defendant as its leading witness. He readily acknowledged defendant's fiduciary obligation under ERISA to give Sandlin a written explanation of his removal from the pension rolls while an investigation and/or a recalculation of pension benefits was in process. Pond was incredulous and found it difficult to believe that a written explanation had not been mailed to Sandlin, just as such explanations were routinely mailed to other pensioners in similar situations. The court can only wonder why Pond was so surprised to learn the facts of the case.

Terriana Chance, defendant's administrative coordinator, admitted telling Sandlin that she could not discuss his problem with him. She also admitted that she told Sandlin's attorney to write her a letter. He did so, and she forwarded it to defendant's attorney, who never answered it. She agreed that if a pensioner is given no reason or explanation for being "cut off," he cannot know what to say on an appeal of the adverse *ex parte* decision, even if he knows that an appeal procedure exists. In this instance, Sandlin was not informed of his right of appeal, even though the pension plan document itself requires that he be formally notified of such a right upon being notified of any adverse action by the trustees.

The horror of defendant's evasive response to Sandlin's repeated requests was demonstrated even after his complaint was filed in this court. It is amply illustrated by the order entered by this court on August 31, 1988, finding certain of defendant's responses to plaintiff's requests for admissions evasive, ambiguous, unresponsive, and woefully inadequate. It was as if defendant felt disdainfully immune

from having to share pertinent information with its own beneficiary.

The now articulated reason (whether or not the real reason) for defendant's stonewalling, ominous, ostentatious, cavalier, indifferent silence in this case was the fact that Sandlin's original pension application contained some "white-out," causing defendant's trustees to suspect possible fraud by Sandlin, something defendant never could prove, and something which this court finds not to be true. Defendant's "investigation" was inexcusably lengthy. It uncovered nothing of substance to indicate culpable conduct by Sandlin. It is impossible to justify hiding a suspicion while doing nothing to prove it. The fact is that a simple mistake of fact and/or interpretation was made by Sandlin's local union. Sandlin himself did nothing wrong except to furnish the information requested of him.

Although Sandlin suffered no monetary loss as a result of the post-suit recalculation of his pension, because the recalculation was proper, he did suffer mental anguish and distress as a result of receiving no satisfactory explanation and having to file suit to obtain it.

*Conclusions of Law*

For aught appearing, Sandlin would have received neither an explanation of his removal from the pension rolls nor his restoration to the pension rolls if he had not filed this action. Without suit, the "investigation" might have lasted forever.

Defendant never interposed as a defense, nor argued, that defendant, the pension fund itself, does not under § 1132(c), as distinguished from the fund's individual trustees and agents, constitute an "administrator." In other words, the "indispensable party" defense was not raised. Ostensibly, then, Sandlin sued the correct party. Otherwise, defendant would surely have pointed it out.

The only question to be answered here is: "To what extent, if any, does the failure of defendant to provide a written response to Sandlin's inquiries call for the imposition of a penalty under 29 U.S.C. § 1132(c)?" The statute, in relevant part, reads as follows:

(c) **Administrator's refusal to supply requested information** ...

Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Neither party has cited any decision by the Eleventh Circuit or by the Supreme Court to provide guidance to this court under the unique circumstances of this case. Without any binding precedent, it is nevertheless clear to this court that the statute here invoked by plaintiff is designed for the purpose of assuring pension plan beneficiaries access to pertinent information reasonably requested. All this court needs to look at is the statutory language. It speaks for itself. Sandlin's request was eminently reasonable under the circumstance of his being suddenly "cut off." He both suddenly lost his much needed pension income and could thereafter obtain no explanation as to why. Defendant argues: (1) that the trustees' decision not to give an explanation was here justified, in good faith, and not willful; and (2) even if not justified, that Sandlin was not injured and thus has no standing to invoke this particular statute. This court disagrees with both defenses. Nothing in § 1132(c) can be construed to provide a pension administrator with a defense to his refusal to comply with a reasonable request because by doing so he might reveal his suspicion that the beneficiary is guilty of fraud. *See Redman v. Warrener*, 516 F.2d 766 (1st Cir.1975); *Wallace v. District No. 2, Marine Engineers Benevolent*

**574**

*Ass'n,* 392 F.Supp. 899 (E.D.La.1975); *Porcellini v. Strassheim Printing Co.,* 578 F.Supp. 605 (E.D.Pa.1983); *Phillips v. Unity Welfare Ass'n,* 359 F.Supp. 1147 (E.D.Mo.1973). The trustees and their agents here deliberately and intentionally withheld information from Sandlin, understandably causing him frustration and distress, if not ultimate monetary loss. There is nothing in § 1132(c) which establishes monetary loss as a prerequisite to the "up to $100 a day," which is in the nature of punitive damages designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the pensioner for actual loss.

Sandlin urges the court to impose the maximum $100 per day for the 402–day failure to answer, and thus to enter judgment in the amount of $40,200. In an exercise of its discretion under § 1132(c), this court will find defendant (which may or may not hereinafter seek personal reimbursement from its guilty trustees or other agents) liable for less than one-half of the $100 per day maximum, namely, an aggregate amount of $15,000, which sum the court deems sufficient to accomplish the salutary purposes of the statute in this particular case.

An appropriate, separate order will be entered.