Anthony J. MAIURO, Plaintiff,

v.

FEDERAL EXPRESS CORPORATION as Administrator of: The Flying Tiger Line, Inc., Fixed Pension Plan for Pilots; The Flying Tiger Line, Inc., Variable Annuity Pension Plan for Pilots; The Flying Tiger Line, Inc., Pension Plan for Flight Engineers; The Flying Tiger Line, Inc., Individually Vested Equity and Security Trust Plan for Pilots; and The Federal Express Corporation Employee's Plan, Defendants.

Civ. A. No. 92–4518 (JFG).

United States District Court,
D. New Jersey.

Feb. 3, 1994.

Tobin G. Nilsen, Minotola, NJ, for plaintiff.

William C. Varian, Jr., Whipple, Ross & Hirsh, P.A., Parsippany, NJ, Elizabeth C. Smith, Federal Exp. Corp., Memphis, TN, for defendants.

OPINION

GERRY, Chief Judge.

This is an action brought under sections 104 and 105 of the Employee Retirement Income Security Act of 1974 for the disclosure of certain pension-related information. Plaintiff also seeks the $100 per day penalty under section 502 of the Act for the pension administrator's failure or refusal to provide the information. All parties have moved for summary judgment, and they have stipulated to all of the material facts of the case. For the reasons set forth herein, summary judgment in favor of the plaintiff is granted in part and denied in part, and summary judgment in favor of the defendants is denied in part and granted in part.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Anthony Maiuro, was a flight engineer with the Flying Tigers Line ("FTL") for 34 years, and he retired on August 6, 1989, one day before FTL merged with defendant Federal Express. The plaintiff contributed to several pension plans while he was an FTL employee. He participated in the FTL Fixed Pension Plan for Pilots; the FTL Variable Annuity Plan for Pilots; the FTL Pension Plan for Flight Engineers; and the FTL Individually Vested Equity and Security Trust Plan for Pilots ("INVEST Plan"). Upon merger with Federal Express, the FTL Fixed Pension Plan for Pilots and the FTL Pension Plan for Flight Engineers merged with the Federal Express Corporation's Employees' Pension Plan. The remaining two pension plans were, and still are, separately administered by Federal Express.

When the plaintiff retired, he requested that he receive a lump sum payment from the FTL Variable Annuity Plan for Pilots. Defendant informed him that, under the terms of the Plan, persons receiving pension payments on or after the retirement age specified in the Plan were not eligible for the lump sum payment option. Plaintiff and his counsel submitted written representations by the previous pension manager which suggest-

ed that the plaintiff would be eligible for the lump sum payment option after the specified retirement age. Defendant honored the previous administrator's representations, and they gave the plaintiff a lump sum payout on January 10, 1991.

It appears that the plaintiff was not convinced that he received all of the money to which he was entitled, both in the lump sum payment and in his monthly payments under the other pension plans. Plaintiff wrote to defendant on three occasions to request information regarding the pensions and his participation in them.[1] Plaintiff's counsel wrote to the defendant on two occasions requesting similar information.[2] In the first two letters from the plaintiff, prior to the defendant's determination that the plaintiff was not eligible for the lump sum payment, the plaintiff requested general information, such as annuity values and the amount of monthly payments. The plaintiff's and his counsel's subsequent letters, dated around the time when the plaintiff indicated that he was unsatisfied with his lump sum payment, became more detailed in their requests.

The defendant responded to the plaintiff's initial requests on October 20, 1989 and November 1, 1989. The defendant also wrote the defendant several times, apparently in response to both oral and written discussions and requests. The defendant provided the plaintiff with copies of his pension plans, a statement of the amounts of money to which he was entitled (per month and lump sum); and a statement of the options which were available to the plaintiff. On September 24, 1991, the plaintiff's counsel wrote a letter to the defendant requesting much information. The defendant responded on January 24, 1992, and it refused to provide any further information. The letter also stated that if the plaintiff felt that he did not receive money to which he was entitled, he could file a formal claim with the Pension Plan.

On May 19, 1992, the plaintiff made a formal claim for: 1) pension benefits under the FTL Pension Plan for Flight Engineers, which merged with the FedEx Employees' Pension Plan; 2) unpaid interest and/or enhanced value for the lump sum payment of the FTL Variable Annuity Pension Plan for Pilots; and 3) unpaid interest and benefits for the FTL Fixed Pension Plan for Pilots. On June 18, 1992, FedEx denied all three of the claims. First, FedEx claimed that the plaintiff was receiving benefits from the FTL Pension Plan for Flight Engineers through the FedEx Employees' Pension Plan; and second, FedEx stated that if it were to honor the plaintiff's request and revalue the pension plan from two months after the plaintiff's retirement, he would actually receive less than what he received in the lump sum payment. The plaintiff appealed these decisions, and the appeal was denied. Plaintiff filed this suit soon thereafter.

Plaintiff alleges that defendant violated sections 104, 105 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1024, 1025 and 1132, by failing to provide pension information within 30 days after a written request has been made. This is the only count in the complaint, and he requests relief by way of the statutory penalty of $100.00 per day until the information is received. 29 U.S.C. § 1132(c). Plaintiff also requests attorney's fees under 29 U.S.C. § 1132(g)(1). Both plaintiff and defendant have requested summary judgment in their favor, and they have stipulated to all of the material facts of the case.

## DISCUSSION

Under sections 104 and 105 of ERISA, 29 U.S.C. §§ 1024 and 1025, a pension plan participant or beneficiary may request certain information from the pension plan administrator.[3] Under section 502 of ERISA,

1. September 1, 1989; September 11, 1989; and, January 18, 1991.

2. January 25, 1991 and September 24, 1991.

3. The disclosure requirement of 29 U.S.C. § 1024(b)(4) reads as follows:

(b) Publication of summary plan description and annual report to participants and beneficiaries of plan....

(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargain-

29 U.S.C. § 1132, an administrator who fails to provide this information within 30 days to a participant or beneficiary who makes a written request is subject to a $100.00 per day penalty awarded at the discretion of the court.[4] Additionally, 29 U.S.C. § 1132(a)(1)(A) provides that a participant or beneficiary who fails to receive information to which he is entitled within 30 days after a written request may bring a civil action in a district court for the $100 per day penalty. The main question presented in this particular action is what documents is the defendant obligated to provide to the plaintiff under the statute?

### A. Arguments and Analysis:

The ERISA statutes do not specify what particular documents an administrator must provide upon written request, and courts have had to divine Congressional intent when faced with these types of cases. Plaintiff argues that his requests are protected by the statutes because they were intended to determine what his interests were so that he could protect them. Plaintiff cites *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923 (3d Cir.1985) and *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134 (3d Cir.1987), *aff'd in part, rev'd in part*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), for the proposition that the Congressional intent in enacting 29 U.S.C. §§ 1024, 1025 and 1132 was to provide pension plan participants and beneficiaries a mechanism to determine what their interests are and how best to protect them.

In *Barrowclough*, the plaintiff, a management-level employee, was discharged for mishandling customer accounts. Upon his discharge, the plaintiff agreed to reimburse the company for any losses that he caused the customers. The plaintiff had contributed to a company pension plan that was neither funded nor secured by the employer. Approximately three days after his discharge, and again two weeks later, the plaintiff wrote the company requesting an accounting of his pension plan contributions. The company responded by stating that any funds that were in the account would be applied to the plaintiff's obligation to reimburse the company, and whatever funds were remaining in the account would be insufficient to cover this obligation. The plaintiff wrote the company twice more, approximately two and four months after the discharge, and he filed suit six months after the discharge seeking, among other things, the penalty for failure to timely respond to a written request for information.

In finding that the plaintiff's requests for an accounting were protected by the statute, the Third Circuit stated that "[t]he legislative history shows that the drafters of ERISA believed that individualized reporting and

---

ing agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

The disclosure requirement of 29 U.S.C. § 1025 reads as follows:

(a) Statement furnished by administrator to participants and beneficiaries

Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information—

(1) the total benefits accrued, and

(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

(b) One-per-year limit on reports

In no case shall a participant or beneficiary be entitled under this section to receive more than one report described in subsection (a) of this section during any one 12–month period.

4. The penalty section for 29 U.S.C. § 1132 reads as follows:

(c) Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form.

(1) Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request in the court's discretion may be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

disclosure would play an important role in effectuating ERISA's goals.... The accounting provision, which is broadly applicable, must be construed so as to protect the employees' interests." *Id.* at 934 (citations omitted). While the court did not specifically describe what information must be contained in the accounting, it did cite the House Conference Report:

> Upon the request of a plan participant or beneficiary, a plan administrator is to furnish on the basis of the latest information available the total benefits accrued and the nonforfeitable pension benefit rights, if any, which have accrued. No more than one request may be made by any participant or beneficiary for this information during any one 12 month period.

*Id.* at 933 (citing H.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 259, *reprinted in* 1974 U.S. Code Cong. & Ad. News 5038, 5042).

The Third Circuit was similarly vague in describing the specifics in reporting requirements in *Firestone.* In *Firestone,* three classes of formerly salaried employees of defendant Firestone sued to receive pension benefits after their division had been sold to another company, and they also requested the $100 per day penalty for failure to provide adequate information. One of the issues in that case was whether the plaintiffs were entitled to request information because there was a question of whether they were pension plan participants or beneficiaries after the sale of the division. In holding that the plaintiffs were entitled to information, the court stated:

> ERISA's legislative history makes clear that Congress intended the information-producing provisions to enable claimants to make their own decisions on how best to enforce their rights. See S.Rep. 93–127, 93d Cong. 1st Sess. at 27 (ERISA's reporting and disclosure requirements imposed so "that individual participants and beneficiaries will be armed with enough information to enforce their own rights"). That function can be performed only if all people with potential rights can obtain information.

*Firestone,* 828 F.2d at 153.

These cases provide little, if any, guidance on what particular information a pension plan participant or beneficiary may request. This is because *Firestone* and *Barrowclough* addressed the question of *who* is entitled to request documents rather than *what* documents could be requested. Other cases outside of this circuit to which the plaintiff cites, such as *Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571 (N.D.Ala. 1988), are equally lacking in substantive guidance on this issue. In *Sandlin,* an employee's pension benefits were terminated, and the defendant-administrator refused to provide any reason. The only response from the defendant was that it was investigating the plaintiff's written request. The court held that the defendant intentionally and knowingly withheld information from the plaintiff by totally failing to respond for over one year, and that the plaintiff was entitled to the $100 per day penalty. *Id.* at 573–74. It appears that the *Sandlin* holding is limited to the proposition that a pension plan beneficiary is entitled to know why his benefits have been terminated. *Id.* at 573. Other cases cited by the plaintiff are similarly vague. *Lee v. Dayton Power and Light Co.,* 604 F.Supp. 987, 1002 (D.C. Ohio 1985) ("The sparse legislative history of [29 U.S.C. § 1024(b)(4) ] reveals Congressional interest in making underlying plan documents available to their participants to further their understanding of their ERISA-covered plans and to aid in their policing of such plans").

Quite simply, these cases do not describe with particularity what information is required to be disclosed under 29 U.S.C. §§ 1024, 1025 and 1132. This is not to say that plaintiff's counsel has not proffered a well-researched argument. Rather, even our own research on this issue, with special emphasis on the Third Circuit, has yielded results similar to the plaintiff's: there is relatively no case-law explaining what information an administrator is required to provide upon written request under ERISA. Most of the few cases that appear within the Third Circuit have addressed the issue of who is entitled to disclosure and whether the defendants are liable for the $100 per day penalty. *Turner v. CF & I Steel Corp.,* 510 F.Supp. 537 (E.D.Pa.1981); *Shlomchik v. Retirement*

*Plan of the Amalgamated Insurance Fund,* 502 F.Supp. 240 (E.D.Pa.1980); *Starr v. JCI Data Processing, Inc.,* 767 F.Supp. 633 (D.N.J.1991).

There is, however, one recent case from the Eastern District of Pennsylvania which may provide some guidance. In *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement,* 822 F.Supp. 247 (E.D.Pa.1993), the plaintiff sued her former employer for benefits wrongfully withheld and for failure to provide her with an accounting within 30 days after her written request. Unlike any of the other cases cited in this memo, the request for the accounting included a request for an explanation of how the administrator computed the total benefits figure. The court stated that:

> While section 1025(a) states only that an administrator must provide a statement stating the total benefits accrued, this provision should be interpreted broadly to accommodate a plan participant's request that the administrator provide the computations to support the amount stated.

*Id.* at 264 (citing *Firestone* and *Barrowclough*). Like the plaintiff in *Haberern,* the plaintiff in the case at bar requested the administrator to provide, in addition to the total amount of benefits accrued, the formula by which the administrator calculated that figure and the figures that the administrator used in the formula (total yearly benefits contributed based upon number of hours worked, etc.). Although the court granted the plaintiff's request to assess the penalty against the defendant for the failure to provide a full accounting, it did not articulate its basis for reaching that conclusion.

There is one final issue which the defendant raises in its brief. Several district court cases in other circuits, and one of the district court cases in the Third Circuit, have required that, in order to be eligible for the $100 per day penalty, the plaintiff must show that he was somehow prejudiced by the failure of the defendant to provide this information. *Shlomchik,* 502 F.Supp. at 245; *Boyd v. Cervantes,* slip op. 81–2043 (D.D.C. May 28, 1982). The courts have created this requirement pursuant to the statute's investment of discretion in the district court to

award the penalty. *Id.* Judge Brotman expressly rejected this requirement in *Starr,* 767 F.Supp. at 641 (granting plaintiff's motion for reconsideration because the Supreme Court's and the Third Circuit's decision in *Firestone* appeared to reject the showing of prejudice requirement). The district court in *Haberern* also rejected the "showing of prejudice" requirement. 822 F.Supp. at 264.

The questions that the court has before it, therefore, are: 1) Which, if any, of the plaintiff's requests are covered by the enforcement provisions in 29 U.S.C. § 1132(c); 2) Has the defendant violated this section for failure to respond to a written request within 30 days; 3) Will the court require the plaintiff to demonstrate that he was prejudiced because of the defendant's failure to respond in a timely manner; and 4) If the court does require a showing of prejudice, has the plaintiff satisfied that showing?

### B. *Mandatory Disclosure of Requested Information:*

 In determining which, of any, of the plaintiff's requests fall within the purview of 29 U.S.C. § 1024 and 1025, we start with three principles established by the Third Circuit with respect to ERISA information requests:

1) "Congress' purpose in enacting the ERISA disclosure provisions [was to ensure] that *the individual participant knows exactly where he stands with respect to the plan ...*" *Firestone,* 489 U.S. at 118, 109 S.Ct. at 958 (emphasis added) (quoting H.R.Rep. No. 93–533, P. 11 (1973), U.S.Code Cong. & Admin.News 1978, 4649).

2) "ERISA's legislative history makes clear that Congress intended the information-producing provisions to *enable claimants to make their own decisions on how best to enforce their rights.* See S.Rep. 93–127, 93d Cong. 1st Sess. at 27 (ERISA's reporting and disclosure requirements imposed so *"that individual participants and beneficiaries will be armed with enough information to enforce their own rights"*). That function can be performed only if all people with potential rights can obtain in-

formation." *Firestone*, 828 F.2d at 153 (emphasis added).

3) "The legislative history shows that the drafters of ERISA believed that individualized reporting and disclosure would play an important role in effectuating ERISA's goals.... *The accounting provision, which is broadly applicable, must be construed so as to protect the employees' interests*." *Barrowclough*, 752 F.2d at 934 (emphasis added).

These principles provide the basic framework from which we may evaluate the plaintiff's requests. These, however, are not the sole factors which we must consider. The implementation of the goals enunciated in these cases must be accompanied by a consideration of how clearly or not the provision of the substantive materials sought serve those goals; subject, of course, to the interpretive limitations imposed by these cases. This was the exact issue the Third Circuit addressed in *Firestone*:

> [W]e concede that it is expensive and inefficient to provide people with information about benefits—and to permit them to obtain damages if information is withheld—if they are clearly not entitled to the benefits about which they are informed. But while this is indeed a problem, we do not believe it insuperable.... We think that discretion can be used, for example by granting summary judgment in appropriate cases, to prevent strategic behavior by plaintiffs seeking to take advantage of § 502(c)'s damage provisions when they are not entitled to any ERISA benefits.

*Firestone*, 828 F.2d at 153. The issue of who is entitled to request information, however, was ultimately decided later by the Supreme Court:

> In our view, the term "participant" is naturally read to mean either employees in, or reasonably expected to be in, covered employment ... or former employees who have ... a reasonable expectation of returning to covered employment or who have a "colorable claim" to vested benefits.... In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Firestone*, 489 U.S. at 117–18, 109 S.Ct. at 958.

A party requesting information, therefore, must first establish that he or she is a pension plan participant or beneficiary. *Id.* Beyond this first preliminary determination, a pension plan administrator must use his or her careful discretion to decide which of the requests fall within the purview of the ERISA disclosure requirements. Drawing upon the principles previously enunciated, we suggest that the requested material must be provided if it:

1) Is of such a character that would directly assist the requesting party in determining what his or her rights are under the pension plan; or

2) Will directly assist the requesting party in determining where he or she stands (eligibility) with respect to the plan; or

3) Will directly assist the requesting party in determining the extent of his or her interest (monetary) in the plan.

Applying this framework to the plaintiff's requests, we find that the plaintiff is entitled to know the origin of his current monthly benefit. This information was requested in the September 24, 1991 letter, and it appears from the stipulated facts that the defendant has not yet answered this request. It seems to us that this request is very basic and reasonable: an employee who has worked for a company for nearly 35 years and who contributes to the pension plans has the right under ERISA to know what has happened to his money. This request provides him with the information to assure him that his retirement income is safe, and alerts him to take appropriate action if it is not.

In determining the sources of his current monthly benefit, the plaintiff is entitled to know the percentages of his benefit which originate from the various pension plans to which he contributed during his years of employment at the company. Additionally, the plaintiff is entitled to a statement which indicates the total amounts which are credited to him under the individual pension plans, how these numbers were calculat-

ed, and the plaintiff's history of contributions to these plans.

We realize that this may be a burdensome task. We think, however, that the Congress has recognized that this onus is better borne by the Pension Administrators than the pensioners who, after years of contributing to their pension funds, often find themselves unable to determine what has happened to their retirement income other than a simple total amount of benefits accrued. ERISA contemplates something more, and our holding today merely comports with the principles underlying that Act.

## C. *502(c) Penalty Provision:*

Once the court determines whether the requesting party is entitled to the documents, it must then determine whether the administrator has failed to provide the documents within 30 days of a written request. If the administrator has failed to provide the information, then the court, at its discretion, may assess the $100 per day penalty. The Third Circuit has acknowledged the wide discretion of the court in this area:

> For example, if the employee's claim for benefits is not colorable, and if the employer displayed no bad faith in responding to the claim—taking somewhat too long to respond to it, for instance, but not ignoring it entirely—then the district court would be well within its discretion in setting damages at $0.

*Firestone,* 828 F.2d at 153. The defendant correctly notes that § 502(c) is a penal provision which imposes personal liability upon a pension plan administrator who, after a written request, refuses or fails to supply information required to be disclosed under Subchapter 1 of ERISA. *Groves v. Modified Retirement Plan for Hourly Paid Employees of the Johns Manville Corp.,* 803 F.2d 109, 116–118 (3d Cir.1986). Quite simply, its primary purpose is to induce plan administrators to comply with ERISA's disclosure provisions, and not to make a participant whole. *Id.* at 117. For this reason, and for the reasons set forth in *Haberern,* 822 F.Supp. at 264, and *Starr,* 767 F.Supp. at 641, we hold that the plaintiff is not required to show

prejudice as a prerequisite to the section 502(c) penalty.

Section 502(c)'s designation as a penalty provision, however, in no way diminishes the district court's discretionary power to impose it, or to decline to impose it, when the court finds that an administrator fails or refuses to provide the required documents. Section 502(c) is nothing more than a tool that Congress has given the district courts to use when necessary in order to meet ERISA's goals. In deciding whether to use this provision, district judges must put the pension administrator's refusal or failure to provide information in the context of the situation. As a general guideline, when imposition of this penalty would assist the court in ensuring that pension administrators honor ERISA's goals and mandates, a judge should not hesitate to impose it to some degree or another.

In this case, however, we decline to impose the section 502(c) penalty because we find that the defendant has not acted in bad faith and that, for the most part, accommodated the plaintiff until the September 24, 1991 requests. *Firestone,* 828 F.2d at 153 (lack of bad faith by employer would justify court setting damages at $0). There has been no bright line test for pension administrators to use in determining whether a written request for information falls under ERISA's mandate. We cannot now penalize the defendant for refusing to supply information for which, at the time of its refusal, we have no reliable evidence the pension administrator knew it was obligated to provide. Accordingly, we hold that the plaintiff's request for the $100 per day penalty under section 502(c) is denied.

## D. *Request for Attorney's Fees:*

Plaintiff has also requested attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party." The Third Circuit, in *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983) established five factors which the court should consider when deciding whether to award attorney's fees under ERISA:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

*Id.* at 673. *See also Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir. 1980).

Certainly, our decision today will benefit the participants and the beneficiaries of the pension plans. We decline, however, to award attorney's fees to the plaintiff because, as we have already stated, we find that the defendant has not acted in bad faith. Additionally, we do not think that there would be any deterrent purpose served by an award of fees. Consequently, plaintiff's request for attorney's fees is denied. The accompanying order has been entered.

### ORDER

This matter, having come before the court on motion of the attorneys for both the plaintiff and the defendants for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and the court having considered the oral arguments of the parties along with their briefs and submissions, and the court having found that there is no issue of material fact;

It is on this 3rd day of February, 1994, ORDERED that plaintiff Anthony Maiuro's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and that defendant Federal Express' motion for summary judgment is DENIED.

Plaintiff's motion for summary judgment ordering the defendant to produce certain information under sections 104 and 105 of the Employee Retirement Income Security Act of 1974 ("ERISA") is GRANTED. Defendant Federal Express is hereby ORDERED to produce an accounting of, any and all information pertaining to, plaintiff Anthony Maiuro's interest in, and entitlement to, funds under the Flying Tigers Line, Inc. Fixed Pension Plan for Pilots and The Flying Tiger Line, Inc. Pension Plan for Flight Engineers. Such information shall include the plaintiff's contribution history to each of the individual plans, the employer contribution history to each of the plans, and the separate formulas and calculations by which the defendant ascertains the amount of the plaintiff's total accrued benefits and the monthly benefits under each individual plan. The plaintiff's request for information pertaining to all other pension plans, for penalties under section 502(c) of ERISA, and for attorney's fees under section 502(g)(1) of ERISA is DENIED.

It is further ORDERED that the defendant's motion for summary judgment is DENIED.