Melvin PELL and Ellen
Pell, Plaintiffs,

v.

E.I. DUPONT DE NEMOURS &
COMPANY INCORPORATED,
et al., Defendants.

No. CIV.A.02–21 KAJ.

United States District Court,
D. Delaware.

Dec. 8, 2004.

Robert Jacobs, Esq., Jacobs & Crumplar, P.A., Wilmington, DE, for Plaintiffs.

Mary E. Cooper, Esq., Kathleen Furey McDonough, Esq., and Erica L. Niezgoda, Esq., Potter Anderson & Corroon LLP, Wilmington, DE, for Defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Before me is a Motion for Summary Judgment (Docket Item ["D.I."] 116; the "Motion") filed by defendants E.I. du Pont de Nemours & Co. Inc., a Delaware corporation, and the Board of Benefits and Pensions of E.I. du Pont de Nemours & Co. Inc. ("the Board") (collectively "DuPont"). This court has jurisdiction pursuant to 28 U.S.C. § 1331.

The Complaint filed by Plaintiffs Melvin Pell, a retired employee of DuPont, and Ellen Pell, his wife, alleges that DuPont breached its duties, obligations, and fiduciary responsibilities under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, by calculating Mr. Pell's benefits under the DuPont pension plan based on a later date than the commencement of his employment with Consolidated Coal Company ("Consol"), a DuPont subsidiary,[1] even

---

1. Consol is no longer a subsidiary of DuPont, but was at the time Mr. Pell became a DuPont

though DuPont represented on several occasions over the course of his employment that it would use the earlier employment-commencement date in calculating his pension. (D.I. 1 at ¶¶ 10–14.) Plaintiffs seek, *inter alia,* to estop DuPont from using the later date in calculating the benefit rights due under the pension plan, and they seek damages, interest, and costs stemming from what they claim is the unfairly low calculation of Mr. Pell's retirement benefits. (*See* D.I. 1 at ¶ 30.)

DuPont denies breaching any duty to the Plaintiffs and argues that (1) Plaintiffs' state law causes of action are preempted, (2) Plaintiffs are receiving all the benefits due to them under the terms of the DuPont Pension and Retirement Plan (the "DuPont Plan") and certain administrative guidelines in force at the time of Mr. Pell's transfer to DuPont (the "Transfer Policy"), and (3) that Plaintiffs' equitable estoppel theory fails as a matter of law. (D.I. 117 at 12–27.)

For the reasons set forth herein, DuPont's Motion will be granted.

## II. BACKGROUND [2]

Mr. Pell was employed by Consol on February 10, 1971. (D.I. 1 at ¶ 6; D.I. 13 at 3.) He provided engineering services to DuPont and worked at their facilities in Delaware while he was on "loan" to DuPont as a Consol employee between 1982 and January 1984. (D.I. 1 at ¶ 7.) Mr. Pell claims that, in 1983, he was asked to consider transferring employment from Consol to DuPont. (*Id.* at ¶ 8.) According to Mr. Pell, one of the key factors he considered in making his decision was whether his retirement benefits under the DuPont Plan would be calculated based on his total combined service at Consol and DuPont. (*Id.* at ¶¶ 9–11.)

Mr. Pell alleges that he transferred his employment to DuPont on January 1, 1984, after receiving assurances that his total combined service would be counted for vesting purposes.[3] (*Id.*) In explaining what effect his transfer of employment would have on his pension, Mr. Pell was told in a letter dated January 13, 1984, from the Director of Employee Compensation and Benefits at Consol, that the "[p]ension ... will be calculated under the DuPont Plan based on ... total combined service." [4] (D.I. 1 at Ex. A.)

Subsequent to the 1984 letter, Mr. Pell received several calculations of his pension benefits from DuPont. In their Complaint, Plaintiffs allege that Mr. Pell received these calculations on at least four occasions: 1991, 1992, 1998 and 1999. (D.I. 1 at ¶ 12.) In Plaintiffs' Answering

employee. (D.I. 5 at ¶ 6.)

**2.** These background facts are repeated nearly verbatim from the October 29, 2003 Memorandum Order in this case. (D.I. 43); *Pell v. E.I. duPont de Nemours & Co. Inc.,* No. Civ.A. 02–21 KAJ, 2003 WL 22466196 (D.Del. Oct. 29, 2003).

**3.** In the Complaint, Plaintiffs claim that "[i]t was only when assured of this total vesting of years by [the letter from the Director of Employee Compensation and Benefits at Consol] that ... [Mr. Pell] agreed to transfer from Consol to DuPont." (D.I. 1 at ¶ 11). Mr. Pell, however, permanently transferred on

January 1, 1984 and the letter was dated January 13, 1984. Inexplicably, in their Opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiffs allege that "this letter ... was actually received before he accepted the transfer." (D.I. 125 at 5.) In support, Plaintiffs cite to Mr. Pell's deposition transcript. (D.I. 125 at 5 (citing D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004, at 72)). That reference, however, does not support the claim that he received this letter before January 13, 1984. *See infra* pp. 12–13.

**4.** The 1984 letter lists Mr. Pell's "Employment Date" as 02–10–71 and "Credited Service Date" as 08–01–72. (D.I. 1 at Ex. A.)

Brief in Opposition to Defendants' Motion for Summary Judgment (the "Opposition"), however, Plaintiffs assert that the four calculations actually occurred in 1991, 1992, 1998 and *2000,* "when ... [Mr. Pell] finally requested his actual pension ...." [5] (D.I. 125 at 8–9.) Each of these calculations, except the one in 2000, used February 10, 1971 to calculate his pension benefits under the DuPont Plan.[6] (D.I. 125 at 8–9; D.I. 1 at ¶ 12; D.I. 1 at Exs. B, C, D.) Mr. Pell alleges that in reliance upon representations that his pension was based on his total combined service starting February 10, 1971, he decided to retire in December 2000. (D.I. 1 at ¶ 13.) Eleven days prior to the date of his retirement, Mr. Pell was, he says, informed by DuPont that his pension was going to be calculated beginning on November 1, 1975 and therefore he would be given credit for 25.1667 years of service rather than the 29.9 years of service he had expected and been assured of by DuPont. (*Id.* at ¶¶ 14–15.)

DuPont does not deny that it made numerous representations to Mr. Pell about basing his pension on February 10, 1971 as the date that his service began, but characterizes the representations as estimates that were "subject to final confirmation at the time a formal application for benefits was made." (D.I. 8 at 4.) To support that characterization, DuPont points to the disclaimer language that appears on the representations, such as "data used in this estimate ... are subject to review and confirmation." (*Id.*)

DuPont claims that its actuaries, in their final calculation of Mr. Pell's pension benefits, used November 1, 1975 rather than February 10, 1971 because of the Transfer Policy that governed the treatment of pension benefits for employees who transferred between Consol and DuPont. (*Id.;* see also D.I. 5 at Ex. B.) The Transfer Policy states that:

> pension benefits for any employee transferring from Consol to DuPont are to be calculated 'as though the individual's total recognized service has been with [DuPont] ... and the pension will be offset by the [Consol] pension accrued at the time of transfer and paid by [Consol] at time of retirement. Consol service for DuPont pension calculation purposes will be recognized only from 11/1/75 forward.'

(D.I. 5, Ex. B at 6, 14.) Mr. Pell denies that he was ever given a copy of the Transfer Policy. (D.I. 13 at 5.)

Mr. Pell deferred retirement until May 31, 2001 while he appealed to the Board the issue of the service date used to calculate his pension benefits. (D.I. 1 at ¶ 19.) On May 24, 2001, the Board denied his appeal. (D.I. 5 at Ex. D.) It explained that since Mr. Pell's service under the DuPont Plan and Transfer Policy "start[ed] on November 1, 1975, a service adjustment of 4.72500 [years was] ... applied to [Mr. Pell's] February 10, 1971 ASD." (D.I. 5, Ex. D at 2.)

The reduction in credited service of approximately four-and-a-half years under the DuPont Plan resulted in a smaller benefit than Plaintiffs had anticipated. (D.I. 1 at ¶ 14.) According to Plaintiffs, the difference between the pension payments is approximately $725 per month,

---

5. In fact, it appears as if Mr. Pell may have received pension calculations on five occasions: 1991, 1992, 1998, 1999, *and 2000.* (D.I. 125 at 28 ("Finally, in 2000, when Mr. Pell applied for [his] pension.... This ... [was] the third time that an incorrect date was provided ....").)

6. In 2000, when Mr. Pell received his last calculation, the date of August 1972 was used instead, because this was the date at which Mr. Pell was eligible for a Consol pension. (D.I. 125 at 9.)

and, if Plaintiffs live their normal life expectancies, the loss will exceed $100,000 in benefits.[7] (*Id.* at ¶¶ 15, 24.) DuPont's response to Mr. Pell was simply that it:

> sincerely regrets that [he] received several incorrect letters and statements over the years, and that [he was] informed of the correct treatment for [his] pension benefit only shortly prior to [his] intended retirement date. Unfortunately, due to the uniqueness of [his] situation (the timing and direction of [his] transfer), significant research was required to determine [his] proper treatment. That research began only upon receipt of [his] notice of intention to retire, and required significant time and resources from Consol, Conoco, and DuPont.

(D.I. 5, Ex. D at 3.)

Prior to bringing suit on January 9, 2002, Mr. Pell exhausted all of his appeals. (D.I. 1 at ¶¶ 19, 16.) Plaintiffs now allege that DuPont breached its fiduciary duties under ERISA by misrepresenting the basis of the pension plan. Based on their reliance on the misrepresentations, Plaintiffs argue that DuPont should be estopped from changing the service date of February 10, 1971 as the basis for Mr. Pell's pension. (*Id.* at ¶ 28.) Plaintiffs also seek back pay for pension benefits, plus interest and future benefits calculated with the February 10, 1971 service date. (*Id.* at ¶ 30.)

On October 29, 2003, I denied DuPont's Motion for Judgment on the Pleadings (D.I. 7) and gave Plaintiffs an opportunity to develop in discovery evidence to support their claims. (*See* D.I. 10.)

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal

---

7. DuPont claims that, even though Mr. Pell is not receiving pension benefits under the DuPont Plan for employment from August 1, 1972 to October 31, 1975, he is receiving pension benefits for this time period under the Consol plan. (*See* D.I. 8 at 8; D.I. 118 at A97, Consol Retirement Plan Calculation Worksheet (noting an "Adjusted Credited Service Date" of 8/1/1972 and the "Last Day Worked" as 12/31/1983).) Plaintiffs do not seem to disagree that Mr. Pell is receiving pension benefits under the Consol plan from August 1, 1972 to October 31, 1975. They merely state that had Mr. Pell's "service been dated February 10, 1971 instead of the date alleged to be utilized by DuPont, August 1, 1972, he would have another 1.5538 years of service and a higher pension benefit." (D.I. 13 at 7–8.) Nonetheless, Plaintiffs argue that Mr. Pell's pension benefits under the DuPont Plan should be based on his total combined service at Consol and DuPont. (*Id.*) Nothing in this Opinion is intended to indicate a factual determination on that question or the legal consequence of it.

citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587, 106 S.Ct. 1348 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ District courts are instructed to employ a *de novo* standard of review when considering a plan administrator's or fiduciary's denial of benefits under ERISA, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "[W]here plan terms grant discretion to the plan administrator or fiduciary to determine a claimant's eligibility for benefits, the decision is subject to review under an 'arbitrary and capricious' standard (i.e., a determination of whether the plan administrator abused its discretion in reaching its decision)." *Mitchell v. Prudential Health Care Plan*, No. Civ.A. 01–331 GMS, 2002 WL 1284947, at *6 (D.Del. June 10, 2002) (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997)). "Where discretion is reserved, the court may overturn the decision [by the plan administrator or fiduciary] only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* (quoting *Abnathya v. Hoff-*

*mann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993)).

## IV. DISCUSSION

### A. Preemption of State Law Claims

Count I of Plaintiffs' Complaint (D.I. 1 at ¶¶ 17–19) could be interpreted as asserting a state law cause of action for fraud. Plaintiffs, however, concede that they "filed this case as a violation of ERISA and not as a state law action." (D.I. 125 at 14.) Therefore, given Plaintiffs' concession that they are not asserting any state law claims, I need not opine on preemption.

### B. Equitable Estoppel

DuPont argues that Plaintiffs are currently receiving all of the benefits due them under the terms of the DuPont Plan and the Transfer Policy. (D.I. 117 at 16.) DuPont's argument is essentially that, based on the terms of the DuPont Plan and Transfer Policy regarding employees who transferred between DuPont and Conoco/Consol, effective in 1983, Mr. Pell's effective date of service is November 1, 1975 and that he is receiving the full and correct amount of benefits.[8] (*Id.* at 16–18.) Plaintiffs counter that, because of DuPont's representations to Mr. Pell, Plaintiffs are entitled to benefits based on service from "February 10, 1971 or no later than August 1, 1972." (D.I. 125 at 20.) If one of the dates advanced by Plaintiffs were used as the date of service upon which benefits began to accrue, Plaintiffs would be entitled to a different pension calculation. Plaintiffs argue that, unless DuPont's admitted representations are held to be of no effect because of the contrary date noted in the DuPont Plan,

---

**8.** As previously noted, *supra* note 7, DuPont also argues that Mr. Pell has received pension benefits for the period from August 1, 1972 through October 31, 1974 under the Consol Plan and hence has "suffered no 'penalty' by transferring to DuPont." (D.I. 117 at 18.)

there is a genuine issue of material fact as to the proper date to use to calculate Mr. Pell's pension benefits. DuPont argues strenuously that the DuPont Plan does have that preclusive effect. (D.I. 128 at 14–17.) Plaintiffs challenge that assertion, arguing that the doctrine of equitable estoppel should prevent DuPont from relying on a date buried in the DuPont Plan. (D.I. 125 at 21–29.)

■ An employer can be liable under ERISA in its fiduciary capacity for making affirmative misrepresentations, such liability being based upon breach of fiduciary duty or equitable estoppel theories. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir.1994) (internal citations omitted). Section 502(a)(3) of ERISA permits a beneficiary "to obtain . . . appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. 1132(a)(3). As clarified by the Supreme Court, ERISA does not permit the award of money damages. *See Great–West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 209–10, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The relief available includes: "accrued benefits due, a declaratory judgment on entitlement to benefits, . . . an injunction against a plan administrator's improper refusal to pay benefits, . . . and removal of the fiduciary." *Huss v. Green Spring Health Servs., Inc.*, 18 F.Supp.2d 400, 408 (D.Del.1998) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

■ In the October 29, 2003 Memorandum Order in this case (D.I. 43; *Pell*, 2003 WL 22466196), I held that Plaintiffs should have the opportunity to develop evidence to establish a basis for relief under an equitable estoppel theory. "To succeed under [an equitable estoppel] theory of relief, an ERISA plaintiff must establish

(1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Curcio*, 33 F.3d at 235 (internal citations omitted). Though given adequate time for discovery, Plaintiffs have failed to develop such evidence. Because Plaintiffs have failed to show, even with all inferences drawn in their favor, that there remains a genuine issue of material fact with regard to whether they reasonably relied upon DuPont's representation, DuPont's Motion will be granted.

Plaintiffs assert that in 1983, Mr. Pell was approached by two DuPont employees, Mr. Miller, Mr. Pell's supervisor, and Mr. McCarthy, Mr. Miller's manager, who verbally offered Mr. Pell a transfer to DuPont. (D.I. 125 at 22.) In this same conversation, Mr. Pell alleges that he was told that, if he transferred to DuPont, his total service with Consol would be counted toward his DuPont pension. (D.I. 125 at 22.) Mr. Pell alleges that as he weighed the pros and cons of transferring to DuPont, he took several factors into consideration including that his salary would be less at DuPont, that he would receive increases in salary at a lower rate, that his children's education would not be as good in Delaware, that the holiday and other benefits under Dupont's plans were not as good as Consol's, and that he would have to pay a higher mortgage rate. (*Id.* at 23.) However, because of the alleged oral representation made by Mr. Miller and Mr. McCarthy, he also believed that, if he transferred to DuPont, he would have a stable retirement with a good pension. (*Id.*) Mr. Pell argues that, in making the decision to transfer to DuPont, he relied on the oral representation of Mr. Miller and Mr. McCarthy, as well as the employment date noted in a January 13, 1984 letter from Consol. The letter indicated an employment date of February 10, 1971

and a credited service date of August 1, 1972 (D.I. 118 at A91). (D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004, at 72:18–73:2.)

■ Notwithstanding their allegations, Plaintiffs fail to make out a viable claim for equitable estoppel because they have not adduced evidence to demonstrate that their reliance on the alleged representations was reasonable. In order to establish "reasonable and detrimental reliance," Plaintiffs must prove both the "reasonableness [of their reliance] and [that they suffered an] injury [as a result of it]." *Curcio*, 33 F.3d at 237 (internal citation omitted.)

The evidence of record simply does not support Mr. Pell's assertion that he relied on the January 13, 1984 letter from Consol in making the decision to transfer to DuPont. The evidence, with all reasonable inferences drawn in Plaintiffs' favor, establishes the following instead. Because his official transfer date was January 1, 1984 (D.I. 118 at A91), the January 13, 1984 letter (D.I. 118 at A91) had not even been sent to Mr. Pell when he signed the documents which transferred his employment to DuPont. When asked at his deposition what actions he had taken in reliance on the January 13, 1984 letter, Mr. Pell responded: "I guess [that] is when I finally signed up, signed the documents." (D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004, at 72:23–24.) Yet, when asked which documents those were, he responded: "To become a DuPont employee. That was at the end of '83." (*Id.* at 73:1–2.) Here, Mr. Pell refers to signing documents which made him a DuPont employee at the end of 1983. At that point, however, the Janu-

ary 13, 1984 letter had not yet been sent. Based on the record evidence and Plaintiffs' admission, Mr. Pell could not have relied on the January 13, 1984 letter in making his decision to transfer to DuPont.[9]

Therefore, the only representation that Mr. Pell could have relied on before he made his decision to transfer to DuPont, was the one allegedly made by Mr. Miller and Mr. McCarthy. DuPont argues that, as a matter of law, Plaintiffs cannot be permitted to rely on oral representations relating to Mr. Pell's pension plan. (D.I. 117 at 20–24.) For support, DuPont cites case law standing for the proposition that, as a matter of law, oral modifications to an ERISA benefit plan are not reasonable bases for reliance. *See, e.g., Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1164 (3d Cir.1990) (holding that the terms of an ERISA plan cannot be altered by informal communications between employer and plan beneficiary); *Abramowicz v. Rohm and Haas Co.*, No. CIV. A. 00–4645, 2001 WL 1346404, at *9 (E.D.Pa. Oct. 30, 2001) (citing *Hozier*, 908 F.2d at 1163, for the proposition that "any oral or informal communications made, as a matter of law, cannot modify a written pension plan."). In the few cases where a beneficiary's reliance was determined to be reasonable, the employer did more than orally misrepresent the plan at issue. *See Curcio*, 33 F.3d at 235–38 (finding reasonable reliance based on written representations of a new health plan); *Smith v. Hartford Ins. Group*, 6 F.3d 131, 140 n. 10 (3d Cir.1993) (holding that a trier of fact could find that the beneficiary's reliance was reasonable based on new amendments incorporated

---

9. Additionally, even if he had received the January 13, 1984 letter before signing the documents to become a DuPont employee, there is a serious question as to whether a letter from Consol could be used to estop DuPont in this case. I do not need to reach that issue, however, because it is clear that Mr. Pell did not receive the letter before he made the decision to transfer to DuPont.

into the benefits plan along with the Hospital's oral assurances).

Based on the foregoing, with all reasonable inferences drawn in Plaintiffs' favor, a trier of fact could not find that Mr. Pell's reliance upon the oral representations of Mr. Miller and Mr. McCarthy was reasonable. Even if those men made the statements Mr. Pell attributes to them, it was, as a matter of law, unreasonable for Mr. Pell to rely on such representations. Under the circumstances presented here, I cannot hold that DuPont is estopped by those representations.

Mr. Pell also points to several other representations made by DuPont regarding the date that would be used to calculate his pension benefits. Those representations, however, occurred long after Mr. Pell had transferred to DuPont. Furthermore, Mr. Pell eventually learned that DuPont intended to use November 1, 1975 as the date upon which his pension benefits would be calculated. He was understandably upset,[10] but he remained a DuPont employee for several months as he appealed to the Board for a recalculation of his benefits. After losing his appeal, he chose to retire, knowing the basis upon which his benefits would be calculated. Plaintiffs have offered no evidence of injury, a necessary element of detrimental reliance, because Mr. Pell has not alleged that he took any action in reliance on those later representations. Because Plaintiffs did not act in reliance on those additional representations, they cannot be considered in determining whether Plaintiffs' original reliance

on the alleged statements of Mr. Miller and Mr. McCarthy was reasonable.

In sum, the only representation allegedly made to Mr. Pell before he signed the documents effectuating his transfer to DuPont was the oral representation by Mr. Miller and Mr. McCarthy, which the case law makes clear is not a basis upon which Mr. Pell could have reasonably relied. Therefore, Plaintiffs have failed to establish that a genuine issue of material fact exists with regard to whether DuPont should be equitably estopped from using November 1, 1975 as the starting date for Mr. Pell's pension benefits calculation.

### C. Breach of Fiduciary Duty

Although Plaintiffs have not clearly asserted a claim for breach of fiduciary duty under ERISA, in their Answering Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs allege that DuPont has breached its fiduciary responsibilities. (D.I. 125 at 16–20, 26–28.) Plaintiffs' argument is that, under 29 U.S.C. § 1025, a plan administrator is required to disclose certain information to plan beneficiaries upon request (D.I. 125 at 17), and, based on DuPont's representations that an earlier date would be used to calculate Mr. Pell's pension, this court should find that DuPont breached its fiduciary duties by failing to act

in good faith and ... in accordance with the ERISA Act in providing the pension to him and the information for which he adopted the pension.... [Further, this court should find that] under *Maiuro* [v. Federal Express Corp.*, 843 F.Supp. 935

---

**10.** I am sympathetic to Plaintiffs' viewpoint. DuPont's repeated misstatements about his creditable years of service are, to put it mildly, a poor way to treat an employee. But, careless communication does not establish a cause of action here. The Board's decision was not arbitrary and capricious. It is worth noting that Mr. Pell apparently received payment from Consol for the time he was employed there and DuPont pension benefits dating back to November 1, 1975, which is approximately eight years before he actually transferred to DuPont. (D.I. 118 at A97, Consol Retirement Plan Calculation Worksheet.)

(D.N.J.1994) ], ... not following the statements provided to Mr. Pell under the Act is a capricious act of the Board of Pensions.... [And thus,] their denial of his benefit should be reversed as arbitrary and capricious.

(D.I. 125 at 20.) Therefore, Plaintiffs conclude, Mr. Pell's pension benefits should be calculated based upon service dates of either February 10, 1971 or August 1, 1972.[11] (*Id.*)

DuPont argues that Plaintiffs cannot "support the essential elements of a claim for breach of fiduciary duty." (D.I. 128 at 14.) Furthermore, says DuPont, "Plaintiffs ... [citation to] *Maiuro* is inapposite" because *Maiuro* dealt with "a failure of the ERISA fiduciary to provide information in response to a request by a plan participant in accordance with its *statutory* obligations, for which a specific statutory remedy exists." (D.I. 128 at 13 (emphasis in original).) "There is no mention in *Maiuro* of fiduciary duties or remedies for breach of fiduciary duties." *Id.*

 Section 404(a)(1) of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ...." 29 U.S.C. § 1104(a)(1). A "fiduciary" under ERISA is any person who "exercises any discretionary ... control respecting management of such plan ... or ... has any discretionary authority ... in the administration of such plan." 29 U.S.C. § 1002(21)(A). The law in the Third Circuit instructs that "when a plan administrator explains plan benefits to its employees, it acts in a fiduciary capacity." *Int'l Union, United Auto., Aerospace &*

*Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 148 (3d Cir.1999) (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255, 1261 n. 10 (3d Cir.1995)) (other internal citations omitted). Based on the obligations imposed by section 404(a)(1), "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed." *Id.* (internal citations omitted). "A misrepresentation is material 'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.'" *Id.* (quoting *In re Unisys,* 57 F.3d at 1264.)

 Under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), a plan participant may have a cause of action for a breach of fiduciary duty. *Burstein v. Ret. Account Plan For Employees of Allegheny Health,* 334 F.3d 365, 384 (3d Cir.2003). To allege and prove a breach of fiduciary duty for misrepresentation, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Id.* (citing *Daniels v. Thomas & Betts Corp.,* 263 F.3d 66, 73 (3d Cir.2001)).

 I agree with DuPont that Plaintiffs have failed to establish a *prima facie* case of breach of fiduciary duty because, as explained in connection with Plaintiffs' estoppel argument, Plaintiffs have not and cannot prove the fourth factor, detrimental reliance on the misrepresentations.[12] By

---

**11.** Plaintiffs also argue that DuPont's representations demonstrate "extraordinary circumstances," an element of Plaintiffs' equitable estoppel argument. (D.I. 125 at 26–28.) I do not consider that issue, since I have

already determined that Plaintiffs have failed to demonstrate reasonable reliance.

**12.** Further, *Maiuro v. Federal Express, Corp.,* 843 F.Supp. 935 (D.N.J.1994), does not support the proposition for which it is offered by

the time those representations were made,[13] Mr. Pell had long since made the decision to transfer to DuPont. Moreover, after those representations were made, and after Mr. Pell learned that DuPont was fixed in its determination to calculate his benefits based on the November 1, 1975 effective date of service, he still chose to retire and take the lower than desired benefits. Under these circumstances, Plaintiffs have failed to establish a *prima facie* case of breach of fiduciary duty. They have not raised a genuine issue of material fact in support of their argument that the Board's decision to follow the DuPont Plan and Transfer Policy was arbitrary and capricious, and summary judgment must therefore be granted for DuPont.

## V. CONCLUSION

Accordingly, based upon the foregoing reasons and authorities, DuPont's Motion for Summary Judgment (D.I.116) will be granted.[14] An appropriate order will follow.

### *ORDER*

For the reasons set forth in the Memorandum Opinion issued in this matter today, IT IS HEREBY ORDERED that the defendants' Motion for Summary Judgment (D.I.116) is GRANTED, and the defendants' Motion to Strike the Report and Preclude the Testimony of Plaintiffs' Proposed Expert Witness (D.I.105) is denied as moot.

Plaintiffs because that case involved a plan administrator's failure to provide information to a beneficiary, subjecting the administrator to the statutory fine of $100.00 per day as described in 29 U.S.C. § 1132, and did not involve an administrator's fiduciary duty.

13. When exactly they were made is a matter of some confusion. *See, supra* n. 5.

14. DuPont's Motion to Strike the Report and Preclude the Testimony of Plaintiffs' Proposed Expert Witness (D.I.105) will be denied as moot.